STERN KILCULLEN & RUFOLO, LLC
Herbert J. Stern
  hstern@sgklaw.com
Joel M. Silverstein
  jsilverstein@sgklaw.com
325 Columbia Turnpike, Suite 110
Florham Park, New Jersey 07932-0992
Telephone: 973.535.1900
Facsimile: 973.535.9664

GIBSON, DUNN & CRUTCHER LLP
Theodore J. Boutrous, Jr., *pro hac vice forthcoming*
  tboutrous@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

*Attorneys for Defendants*
*Chevron Corporation and Chevron U.S.A. Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MATTHEW J. PLATKIN, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY; NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; and CARI FAIS, ACTING DIRECTOR OF THE NEW JERSEY DIVISION OF CONSUMER AFFAIRS,<br><br>*Plaintiffs*,<br><br>v.<br><br>EXXON MOBIL CORPORATION; EXXONMOBIL OIL CORPORATION; BP P.L.C.; BP AMERICA INC.; CHEVRON CORPORATION; CHEVRON U.S.A. INC.; CONOCOPHILLIPS; CONOCOPHILLIPS COMPANY; PHILLIPS 66; PHILLIPS 66 COMPANY; SHELL PLC; SHELL OIL COMPANY; and AMERICAN PETROLEUM INSTITUTE, | Civil Action No. 3:22-cv-06733-ZNQ-RLS<br><br>Hon. Zahid N. Quraishi, U.S.D.J.<br>Hon. Rukhsanah L. Singh, U.S.M.J.<br><br><br>Return Date: March 20, 2023<br><br>**Oral Argument is Requested** |

*Defendants.*

## **DEFENDANTS' MOTION TO STAY PROCEEDINGS**

## TABLE OF CONTENTS

INTRODUCTION AND BACKGROUND ................................................................ 1

LEGAL STANDARD .......................................................................................... 3

ARGUMENT ..................................................................................................... 4

    A.  A Brief Stay Will Preserve Judicial Resources And Promote Judicial Economy. .............. 4

    B.  Plaintiffs Will Not Be Prejudiced By A Short Stay. ........................................... 9

    C.  Defendants Face Serious Hardship Absent A Stay. ........................................... 12

CONCLUSION ................................................................................................. 14

# TABLE OF AUTHORITIES

**CASES**

*Abbot Diabetes Care, Inc. v. DexCom, Inc.*
  2007 WL 2892707 (D. Del. Sept. 30, 2007)............................................................9

*American Elec. Power Co. v. Connecticut*,
  564 U.S. 410 (2011).........................................................................5, 7, 8

*Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*,
  25 F.4th 1238 (10th Cir. 2022) ...................................................................4, 8

*Bechtel Corp. v. Local 215, Laborers' Intern. Union of North America*,
  544 F.2d 1207 (3d Cir. 1976).......................................................................9

*BP p.l.c. v. Mayor & City Council of Baltimore*,
  141 S. Ct. 1532 (2021)..............................................................................6

*City of Annapolis, Maryland v. BP P.L.C.*,
  2021 WL 2000469 (D. Md. May 19, 2021).........................................................13

*City of Milwaukee v. Illinois*,
  451 U.S. 304 (1981)..................................................................................5

*City of New York v. Chevron Corp.*,
  993 F.3d 81 (2d Cir. 2021)..........................................................................5, 8

*Clinton v. Jones*,
  520 U.S. 681 (1997)..................................................................................3

*Depomed Inc. v. Purdue Pharma L.P.*,
  2014 WL 3729349 (D.N.J. July 25, 2014)......................................................9, 10

*Divine Fish House, Inc. v. BP, P.L.C.*,
  2010 WL 2802505 (D.S.C. July 14, 2010) ......................................................8, 11

*Gesture Technology Partners, LLC v. LG Electronics Inc.*,
  2022 WL 1002101 (D.N.J. Apr. 4, 2022) ..........................................................10

*In Sam L. Majors Jewelers v. ABX, Inc.*,
  117 F.3d 922 (5th Cir. 1997) ........................................................................5

*Int'l Paper Co. v. Ouellette*,
  479 U.S. 481 (1987)..................................................................................5

*L-3 Commc'ns Corp. v. Serco Inc.*,
  39 F. Supp. 3d 740 (E.D. Va. 2014) ...............................................................6

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936)......................................................................................3, 4

*Estate of Maglioli v. Andover Subacute Rehabilitation Center*,
   2021 WL 2525714 (D.N.J. June 18, 2021) ...................................................3, 9, 14

*MEI, Inc. v. JCM Am. Corp.*,
   No. 09-351, 2009 WL 3335866 (D.N.J. Oct. 15, 2009) ........................................3, 4

*Mey v. Got Warranty, Inc.*,
   2016 WL 1122092 (N.D. W.Va. Mar. 22, 2016)....................................................11

*Michelin Retirement Plan v. Dilworth Paxson, LLP*,
   2017 WL 2531845 (D.S.C. June 12, 2017)...........................................................10

*Minnesota* v. *Am. Petroleum Inst.*,
   2021 WL 3711072 (D. Minn. Aug. 20, 2021) .......................................................13

*Neste Oil OYJ v. Dynamic Fuels, LLC*,
   2013 WL 3353984 (D. Del. July 2, 2013) ............................................................10

*Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc.*,
   2010 WL 1946262 (E.D. Va. May 10, 2010) ..........................................................4

## STATUTES

28 U.S.C. § 1331............................................................................................1, 4

28 U.S.C. § 1447(c) .........................................................................................13

## OTHER AUTHORITIES

David C. Thompson & Melanie F. Wachtell, *An Empirical Analysis of Supreme Court Certiorari Petition Procedures: The Call for Response and the Call for the Views of the Solicitor General*, 16 Geo. Mason L. Rev. 237, 274 (2009) ...................................................6

Peter Sugarman, "Sea Level Rise in New Jersey," New Jersey Department of Environmental Protection, October 1998. ..................................................................................12

Stephen M. Shapiro et al., *Supreme Court Practice* 6-163 (11th ed. 2019) ...................................7

## RULES

Sup. Ct. R. 10..................................................................................................7

## INTRODUCTION AND BACKGROUND[1]

Plaintiffs filed this action against a select group of energy companies in the New Jersey Superior Court seeking to use state law to impose liability for past and future harms allegedly attributable to global climate change.  Defendants removed the case to this Court on multiple independent grounds, including that Plaintiffs' claims are necessarily and exclusively governed by federal common law, and thus there is federal question jurisdiction under 28 U.S.C. § 1331.  *See* Dkt. 1.  Plaintiffs intend to file a motion to remand and will likely assert that Defendants' removal arguments are foreclosed by the Third Circuit's decision affirming remand in similar climate change-related cases, *Delaware v. B.P. America Inc.*, No. 22-1096 (3d Cir.) and *City of Hoboken v. Chevron Corp.*, 21-2728 (3d Cir.).  But there is a significant wrinkle here that warrants taking a short pause and staying proceedings, including briefing on Plaintiffs' anticipated motion to remand.

The wrinkle is that the very important and threshold question of whether claims seeking redress for injuries allegedly caused by the effect of transboundary greenhouse gas emissions on the global climate are governed by federal law, and therefore belong in federal court, has now been presented to the Supreme Court in *five* petitions for writs of certiorari in substantially similar climate change-related cases—*Suncor Energy (U.S.A.) Inc. v. Board of County Commissioners of Boulder County*, No. 21-1550 (U.S.) ("*Suncor*"), *Mayor & City Council of Baltimore*, No. 22-361 (U.S.) ("*Baltimore*"), *Chevron Corp. v. Cnty. of San Mateo*, No. 22-495 (U.S.) ("*San Mateo*"), *Rhode Island v. Shell Oil Prod. Co.*, No. 22-524 (U.S.) ("*Rhode Island*"), and *City & Cnty. of Honolulu v. Sunoco LP*, No. 22-523 (U.S.) ("*Honolulu*").  The defendants in *Hoboken*—all of

---

[1]  This motion is submitted subject to and without waiver of any defense, affirmative defense, or objection, including personal jurisdiction, insufficient process, or insufficient service of process.

whom are also Defendants in this case—will soon be filing a certiorari petition seeking review of the Third Circuit's decision. If the Supreme Court determines that removal was proper, this case will remain in federal court and briefing on Plaintiffs' anticipated motion to remand (and the Court's consideration of that motion) will be unnecessary.

It makes eminent good sense to stay proceedings in this case and await guidance from the Supreme Court on whether these types of climate change cases should be litigated in federal or state court before briefing and deciding the removal issues here. Indeed, staying remand briefing pending the Supreme Court's decisions will promote judicial efficiency by avoiding potentially unnecessary litigation in this Court. If the Supreme Court agrees with petitioners that federal jurisdiction exists in these cases and reverses the remand orders below, there will be no need for the Parties to brief (and this Court to decide) that issue here. And, even if the Supreme Court does not completely resolve the question of federal jurisdiction, it may narrow and focus the issues on which this Court will have to rule.

There is a very real possibility that the Supreme Court will grant certiorari and address this issue. There is currently a split between the federal courts of appeals on the question whether federal common law applies to these types of claims. And, *significantly*, on October 3, 2022, the Supreme Court issued an Order inviting the Solicitor General to file a brief expressing the views of the United States on the petition for a writ of certiorari in *Suncor*—an unusual and significant development that *substantially increases* the likelihood that the Supreme Court will grant the certiorari petition and demonstrates multiple Justices are interested in the issue. The Supreme Court's order calling for the views of the United States makes a stay even more appropriate.

It makes little sense for the Parties to brief the issues of federal jurisdiction now—before the Supreme Court addresses the same issues. At best, if the Supreme Court grants one of these

petitions, the Parties would need to file supplemental briefs in this Court to address the Supreme Court's decision, and at worst, this action might be remanded erroneously to state court in violation of Defendants' entitlement to a federal forum. Moreover, because the Supreme Court will likely decide whether to grant these petitions in the next several months, Plaintiffs cannot plausibly claim any meaningful harm from a brief stay, whereas a premature and potentially erroneous remand would substantially prejudice Defendants.

For these reasons, the Parties submitted a joint briefing stipulation, which was entered by the Court on December 5, 2022 (Dkt. No. 36), that provides for briefing this motion to stay before briefing Plaintiffs' motion to remand. The Court should grant this Motion and avoid the potentially unnecessary expenditure of party and judicial resources addressing the removal and remand issues on which the Supreme Court may provide important, if not dispositive, guidance in the near future.

## LEGAL STANDARD

District courts have the inherent power to stay proceedings pending before them. *MEI, Inc. v. JCM Am. Corp.*, No. 09-351, 2009 WL 3335866, at *4 (D.N.J. Oct. 15, 2009) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "'Factors justifying a stay in such circumstances include the interests of justice and judicial economy,' which in turn include 'avoiding inconsistent results, the duplication of efforts, and waste of judicial resources.'" *City of Hoboken v. Exxon Mobil Corp.*, No. 20-cv-14243, ECF 133 (D.N.J. Dec. 15, 2021) (order granting motion to stay proceedings) (quoting *Estate of Maglioli v. Andover Subacute Rehabilitation Center*, 2021 WL 2525714, at *3 (D.N.J. June 18, 2021)). "A district court 'has broad discretion to stay proceedings as an incident to [the] power to control [its] own docket.'" *Estate of Maglioli*, 2021 WL 2525714, at *3 (citing *Clinton v. Jones*, 520 U.S. 681, 706 (1997)) (alteration in original); *see also Landis*, 299 U.S. at 248, 254. "In exercising its authority to grant a stay, a court is given wide discretion to 'weigh

competing interests and maintain an even balance.'" *Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc.*, 2010 WL 1946262, at *2 (E.D. Va. May 10, 2010) (quoting *Landis*, 299 U.S. at 255).

## ARGUMENT

**A.     A Brief Stay Will Preserve Judicial Resources And Promote Judicial Economy.**

A discretionary stay is warranted where it would "avoid[] inconsistent results, the duplication of efforts, and the waste of judicial economy." *MEI, Inc.*, 2009 WL 3335866 at *4.  A stay would undoubtedly do so here.  If the Supreme Court agrees with petitioners' argument that Plaintiffs' claims necessarily arise under federal law and are removable on that basis, the Parties will not need to brief, and this Court will not need to decide, those issues here.

The Supreme Court will soon consider and address these *very issues*.  There is a substantial possibility that the Supreme Court will grant certiorari in *Suncor* and find that these climate change-related cases are governed by federal common law and therefore belong in federal court. *Suncor* involves a set of climate change-related cases like this one, in which governmental plaintiffs are seeking damages for purported localized injuries allegedly caused by global climate change resulting from worldwide greenhouse gas emissions.  In 2019, the U.S. District Court for the District of Colorado remanded those cases to state court, and the Tenth Circuit later affirmed. *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238 (10th Cir. 2022).  The defendants in those cases—including ExxonMobil, a Defendant in this case—filed a petition for a writ of certiorari on June 8, 2022, asking the Supreme Court to decide two questions: (1) "[w]hether federal common law necessarily and exclusively governs claims seeking redress for injuries allegedly caused by the effect of interstate greenhouse-gas emissions on the global climate" and (2) "[w]hether a federal district court has jurisdiction under 28 U.S.C. § 1331 over claims necessarily and exclusively governed by federal common law but labeled as arising under state law."  *Suncor* Petition for a Writ of Certiorari at i.  And the defendants in *Baltimore, San*

*Mateo*, *Rhode Island*, and *Honolulu*—including *all Defendants* in this case—have presented *these same issues* in their petitions for writs of certiorari to the Supreme Court, which were all filed earlier this year. If the Supreme Court grants certiorari and answers these questions in the affirmative, federal jurisdiction exists and removal would be appropriate here.

Although a number of circuits that have addressed these questions have concluded the opposite, those decisions stand in stark contrast to the decisions of other courts of appeals. For example, the Second Circuit has squarely held that claims, like those asserted here, seeking redress for alleged injuries caused by global climate change are "federal claims" that "must be brought under federal common law." *City of New York v. Chevron Corp*., 993 F.3d 81, 92, 95 (2d Cir. 2021). In fact, the Second Circuit held that these types of claims are "the quintessential example of when federal common law is most needed." *Id.* at 92. In so holding, the Second Circuit relied on a "mostly unbroken string" of U.S. Supreme Court precedent that "has applied federal law to disputes involving interstate air . . . pollution." *Id.* For example, the Supreme Court has held that "the basic scheme of the Constitution . . . demands" that "federal common law" govern disputes involving "air and water in their ambient or interstate aspects." *American Elec. Power Co. v. Connecticut*, 564 U.S. 410, 421 (2011) ("*AEP*"). Similarly, the Supreme Court has held that in disputes concerning inter-state and international emissions, "[t]he rule of decision [must] be[] federal," *id.* at 108 n.10, and "state law cannot be used" at all, *City of Milwaukee v. Illinois*, 451 U.S. 304, 313 n.7 (1981) ("*Milwaukee II*"); *see also Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 488 (1987) (interstate pollution "is a matter of federal, not state, law"). If the Supreme Court were to adopt the Second Circuit's approach—consistent with its own precedent—the claims alleged here would be removable to federal court. *See*, *e.g.*, *In Sam L. Majors Jewelers v. ABX, Inc.,* 117 F.3d 922, 924, 928 (5th Cir. 1997) (holding that "removal is proper" when nominally state law

claims in fact "ar[i]se under federal common law"); *L-3 Commc'ns Corp. v. Serco Inc.*, 39 F. Supp. 3d 740, 745 (E.D. Va. 2014) ("[A] case is properly removed if federal common law governs it.").

Importantly, the Supreme Court recently issued an order in *Suncor* inviting the Solicitor General to provide the views of the United States on these issues. This development is highly significant because it signifies that the Court is specifically interested in the questions presented and is giving focused consideration to a potential grant of certiorari. Indeed, petitions for which the Court calls for the Solicitor General's views are "over 46 times more likely to be granted" than the average petition.[2] An order requesting the views of the United States is exceedingly uncommon and demonstrates that at least four Justices—the same number sufficient to grant certiorari—have a serious interest in the issues presented *and* believe them worthy of further consideration by the Court.[3] In fact, of the nearly 1,000 petitions addressed by the Court in its October 3, 2022 Order List, the Court sought the Solicitor General's views in *only four* cases, one of which was *Suncor*.

Moreover, the United States previously has taken the position that climate change-related claims similar to those asserted here are properly removable because "they are inherently and necessarily federal in nature." Brief for the United States as *Amicus Curiae* Supporting Petitioners at 26, *BP p.l.c. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532 (2021) (No. 19-1189) (citing *City of Oakland v. B.P. p.l.c.*, No. 18-16663 (9th Cir.), Dkt. 198); *see also* Transcript of Oral Argument at 31:2-12, *BP p.l.c. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532 (2021) (No. 19-1189) (explaining that "potentially conflicting" state law is inappropriate because the case "depends on alleged injuries . . . caused by emissions from all over the world"); *Oakland*, No. 18-

---

[2] David C. Thompson & Melanie F. Wachtell, *An Empirical Analysis of Supreme Court Certiorari Petition Procedures: The Call for Response and the Call for the Views of the Solicitor General*, 16 Geo. Mason L. Rev. 237, 274 (2009).

[3] Thompson & Wachtell, *supra* note 2, at 242 n.22.

16663 (9th Cir.), Dkt. 198 at 2 ("A putative state-law claim is also removable if alleged in a field that is properly governed by federal common law such that a cause of action, if any, is necessarily federal in character.").  And the United States, under the Obama Administration, warned of the risk that common-law suits targeting greenhouse gas emissions might interfere with federal regulations, noting that the "EPA has directly entered the field plaintiffs would have governed by common-law nuisance suits" by "actively exercising its judgment and statutory discretion to determine when and how emissions from different categories of sources of greenhouse gases will be regulated."  Brief for the Tennessee Valley Authority as Respondent Supporting Petitioners at 45–46, *American Electric Power Co. v. Connecticut*, 564 U.S. 410 (2011) (No. 10-174) (2011 WL 1393805).  The conflict between the United States' position—that claims asserting injuries from global climate change are inherently federal—and the position of the Tenth Circuit in *Suncor* (as well as the circuit decisions in *Rhode Island*, *Hoboken*, *Baltimore*, *San Mateo* and *Honolulu*) further weighs in favor of Supreme Court review.

These are precisely the types of "compelling reasons" that support a grant of certiorari by the Supreme Court.  *See* Sup. Ct. R. 10.  Indeed, the Supreme Court's order requesting the Solicitor General to provide the views of the United States makes clear that the question is "of sufficient public concern" for the Court to consider the government's views "relevant to [its] consideration of the case."   Stephen M. Shapiro et al., *Supreme Court Practice* 6-163 (11th ed. 2019). Accordingly, there is a significant probability that the Supreme Court will grant certiorari and decide the issues presented in *Suncor*, *Rhode Island*, *Hoboken*, *Baltimore*, *San Mateo*, and *Honolulu*.

There is also a reasonable likelihood that the Supreme Court will reverse the courts of appeals' decisions and find that these types of climate change-related cases are necessarily and

exclusively governed by federal common law and, therefore, removable to federal court.  As noted above, significant authority confirms that claims such as these must be governed by federal law, and are therefore subject to federal jurisdiction.  *See supra* at 5.  Indeed, the Second Circuit held that New York City's "sprawling" claims, which, like Plaintiffs' here, sought "damages for the cumulative impact of conduct occurring simultaneously across just about every jurisdiction on the planet," were "simply beyond the limits of state law."  *City of New York*, 993 F.3d at 93.  Accordingly, even though the claims were nominally pleaded under state law, the court held that they "must be . . . federal claims," "brought under federal common law."  *Id.* at 95 (emphasis added).

In addition, and *critically*, if the Supreme Court finds that these types of claims are governed by federal law, Plaintiffs would have no remedy and their claims must be dismissed. This is because the Supreme Court has held that federal common law claims involving interstate air pollution have been displaced by the Clean Air Act ("CAA").  *AEP*, 564 U.S. at 423–29. Relying on this precedent, the Second Circuit dismissed New York City's climate change-related claims, holding that the "Clean Air Act displaces federal common law claims concerned with greenhouse gas emissions."  *City of New York*, 993 F.3d at 95.  In fact, plaintiffs in other climate change-related cases—represented by the same outside counsel as Plaintiffs here—have repeatedly conceded this point.  In Delaware, for example, the plaintiff admitted "the federal common law of nuisance that formerly governed transboundary pollution suits *no longer exists* due to Congress's displacement of that law' by the Clean Air Act."[4]  Similarly, the plaintiffs in Honolulu

---

[4]  Plaintiff-Appellee's Answering Brief at 6, *State of Delaware v. BP America Inc.*, No. 22-1096 (Apr. 14, 2022) (quoting *Bd. of Cnty. Commissioners of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, at 1259–60, and *Mayor & City Council of* Baltimore *v. BP P.L.C.*, 31 F.4th 178, 206 (4th Cir. 2022)) (emphasis in original).

acknowledged that the "CAA displaced all federal common law relating to greenhouse gas pollution."[5]  Accordingly, if the Supreme Court reverses, not only will this eliminate any need to brief removal and remand here, it will directly resolve the merits as well because Plaintiffs have no remedy under federal law and their claims must be dismissed.

And even if the pending petitions do not fully resolve these issues, the substantial overlap in legal issues provides sufficient grounds for a stay.  *See Estate of Maglioli*, 2021 WL 2525714, at *5 ("The exercise of [a stay] is 'particularly appropriate' where the outcome of another case 'may substantially affect or be dispositive of the issues in a case pending before a district court.'" (quoting *MEI, Inc.*, 2009 WL 3335866, at *4) (internal quotation marks omitted)); *Bechtel Corp. v. Local 215, Laborers' Intern. Union of North America*, 544 F.2d 1207, 1215 (3d Cir. 1976) ("In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues.").  Among other things, the Supreme Court's resolution of the jurisdictional questions before it could narrow the issues before this Court and guide both the Parties and the Court in deciding the threshold question of federal jurisdiction.  Put simply, the Supreme Court's determination of these petitions "will fundamentally affect the outcome of Plaintiffs' pending motions to remand."  *Estate of Maglioli*, 2021 WL 2525714, at *5.

**B.      Plaintiffs Will Not Be Prejudiced By A Short Stay.**

In considering prejudice to the non-moving party, courts have evaluated the progress of the case, the presence of pending motions, and the length of delay proposed.  *See Depomed Inc. v. Purdue Pharma L.P.*, 2014 WL 3729349, at 6 (D.N.J. July 25, 2014); *Abbot Diabetes Care, Inc.*

---

[5]  Plaintiffs' Opposition to Defendants' Joint Motion to Dismiss for Failure to State a Claim at 4, *City. and Cnty. of Honolulu v. Sunoco LP*, No. 1 CCV-20-0000380 (Haw. Cir. Ct. July 19, 2021).

*v. DexCom, Inc.* 2007 WL 2892707 (D. Del. Sept. 30, 2007).   These considerations weigh decisively in favor of a stay here.

This case is still in its *very* early stages.   Plaintiffs filed this action on October 18, 2022 (*see* Dkt. 1-1), and Defendants removed it to this Court on November 22, 2022 (*see* Dkt. 1).   The Parties have not yet commenced discovery or filed dispositive motions; in fact, this is *the first motion* either party has filed since the case was removed to federal court.   As this Court has explained:   "Staying a case early in the litigation can be said to save time and judicial resources as the stay maximizes the likelihood that neither the Court nor the parties expend their assets addressing invalid claims."   *Depomed Inc.*, 2014 WL 3729349, at *6 (cleaned up); *accord Neste Oil OYJ v. Dynamic Fuels, LLC*, 2013 WL 3353984, at *5 (D. Del. July 2, 2013).   It is therefore no surprise that courts routinely grant stays at such an early juncture.   *See, e.g.*, *Gesture Technology Partners, LLC v. LG Electronics Inc.*, 2022 WL 1002101, at *6 (D.N.J. Apr. 4, 2022) (finding that "because [the] litigation is in its infancy, a stay is appropriate"); *Neste Oil*, 2013 WL 3353984, at *5 ("[T]he fact that this case remains in its earliest stages only increases the prospect that a stay pending review will advance the interests of judicial economy."); *Michelin Retirement Plan v. Dilworth Paxson, LLP*, 2017 WL 2531845, at *5 (D.S.C. June 12, 2017) ("[A] stay will not cause unreasonable hardship to the remaining parties because this case is in the early stages and discovery has not yet commenced."); *Virginia ex rel. Integra Rec*, 2015 WL 222312, at *5 (E.D. Va. Jan. 14, 2015) ("[T]he Commonwealth can claim little prejudice" where the action has "only just commenced[,] [n]o answers have been filed, no discovery has begun, and no trial date has been set.").

At the same time, the requested stay will be for only a short period of time.   The *Suncor* petition is fully briefed and is merely awaiting the Solicitor General's submission of the views of

the United States.  Under these circumstances, a brief stay is appropriate and warranted.  As another court explained in granting a stay under similar circumstances:  "[I]t is prudent to put this litigation on hold for a few months in order to benefit from any pertinent wisdom the Supreme Court may offer."  *Mey v. Got Warranty, Inc.*, 2016 WL 1122092, at *3 (N.D. W.Va. Mar. 22, 2016); *see also Divine Fish House, Inc. v. BP, P.L.C.*, 2010 WL 2802505, at *2 (D.S.C. July 14, 2010) ("A delay of a few months . . . is, nonetheless, slight when compared to the hardship to the defendants and the interests of judicial economy.").

Plaintiffs' own actions belie any suggestion that they could be prejudiced by a stay.  Indeed, the State of New Jersey has been well aware of the potential impacts of emissions from fossil fuel products on the global climate for at least *thirty-three* years and, nevertheless, waited until now to bring its lawsuit.  In 1989, for example, New Jersey Governor Thomas Kean issued an Executive Order that described "emissions of carbon dioxide" as "a necessary byproduct of the combustion of fossil fuels and a major contributor to global climate change."  State of New Jersey, "Executive Order #219," October 23, 1989, https://nj.gov/infobank/circular/eok219.htm.  Specifically, the Executive Order concluded that a "scientific consensus exists that emissions of certain gases . . . are causing significant changes in the composition of the Earth's atmosphere" and "that these emissions are likely to cause significant changes in the Earth's climate, including overall warming, increased drought, an increase in the intensity of hurricanes and other major storms, as well as increased incidence of harmful ultraviolet radiation."  *Id.*  The Executive Order also found that "[t]hese climatic changes are predicted to result in increases in sea levels, geographic shifts in the habitats of many plants and animals, and the extinction of potentially large numbers of species."  *Id.*

11

Similarly, in 1998, *almost 25 years before this lawsuit was filed*, the New Jersey Department of Environmental Protection (a Plaintiff here) published a report stating: "Global warming of the atmosphere and ocean resulting from increasing concentrations of carbon dioxide and greenhouse gases (greenhouse gas warming) will control the rise of global sea level."[6] The report also found that "the prevailing scientific view is that continued and increased emissions of greenhouse gases will disrupt the Earth's climate in the foreseeable future."[7]

And notably, in 2004, the State of New Jersey filed a complaint seeking to enjoin emissions from power companies, alleging that "[t]here is a clear scientific consensus that global warming has begun and that most of the current global warming is caused by emissions of greenhouse gases, primarily carbon dioxide from fossil fuel combustion." Compl. ¶ 79, *Connecticut et al. v. Am. Elec. Power Co.*, No. 1:04-cv-05669-LAP (S.D.N.Y. July 21, 2004), Dkt. 1. Given Plaintiffs' long-standing acknowledgment of the potential relationship between greenhouse gas emissions and the alleged injuries of which they now complain, Plaintiffs cannot seriously argue that they will be prejudiced by a stay pending Supreme Court proceedings.

In short, a stay will not injure Plaintiffs, but will instead preserve the Parties' resources and promote judicial economy and the public interest by avoiding simultaneous litigation on closely related—indeed, identical—issues before the district and appellate courts.

## C.   Defendants Face Serious Hardship Absent A Stay.

In contrast, Defendants face substantial hardship if proceedings in this case move forward without the benefit of the Supreme Court's guidance. As an initial matter, Defendants will be required to litigate remand issues in this Court without the aid of potentially dispositive instruction

---

[6] Peter Sugarman, "Sea Level Rise in New Jersey," *New Jersey Department of Environmental Protection*, October 1998.

[7] *Id.*

from the Supreme Court.  As a Maryland district court found in granting a motion to stay in a similar climate change case, denying the motion would have forced the parties "to brief the Remand Motion while the legal landscape is shifting beneath their feet" and would "result in a decision by this Court with the proverbial half a deck." *City of Annapolis, Maryland v. BP P.L.C.*, 2021 WL 2000469, at *4 (D. Md. May 19, 2021); *see also Minnesota* v. *Am. Petroleum Inst.*, 2021 WL 3711072, at *4 (D. Minn. Aug. 20, 2021) (staying execution of remand pending appeal in a similar climate change case).  And if the Supreme Court grants certiorari and concludes there is federal jurisdiction over actions alleging harms from global climate change, then all of the efforts expended in the interim by the Parties and this Court on remand issues will have been entirely unnecessary.

Moreover, if this Court grants Plaintiffs' motion to remand, proceedings in New Jersey state court could resume immediately.  *See* 28 U.S.C. § 1447(c) ("A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court.  The State court may thereupon proceed with such case.").[8]  As a result, absent a stay, the Parties may be forced to proceed in state court before the Supreme Court has the opportunity to weigh in on this important and critical jurisdictional issue.

This poses a particularly profound risk to Defendants because, if jurisdiction is ultimately resolved by the Supreme Court in favor of federal jurisdiction, Defendants will have been denied their right to a federal forum.  During this time, the Parties may have undergone meaningful (and costly) litigation in state court—including substantive motion practice and possibly even

---

[8]  Moreover, on top of the harm to the Parties, failing to stay proceedings risks harm to the judicial process more generally—including the risk of inconsistent rulings if this Court enters a remand order that ultimately proves irreconcilable with the disposition of the pending petitions for writs of certiorari before the Supreme Court.  *See, e.g.*, *City of Hoboken*, No, 20-cv-14243, ECF 133 (D.N.J. Dec. 15, 2021).

discovery—which this Court would then have to untangle.  Courts routinely find irreparable harm where, as here, there is a substantial "risk of [the] inefficient use of the parties' time and resources." *Estate of Maglioli*, 2021 WL 2525714, at *7 (finding irreparable harm where defendant would face the "burden of having to simultaneously litigate the[] cases in state court and on appeal to the [] Circuit court, as well as the potential of inconsistent outcomes if the state court rules on any motions while the appeal is pending").

## CONCLUSION

For the foregoing reasons, the Court should stay further proceedings in this case pending resolution of the forthcoming petition for a writ of certiorari in this case and the petitions filed in *Suncor*, *Baltimore*, *San Mateo*, *Rhode Island*, and *Honolulu*, including any review on the merits.

Dated: December 22, 2022                              Respectfully submitted,

By: */s/ Herbert J. Stern*
Herbert J. Stern

STERN, KILCULLEN & RUFOLO, LLC
Herbert J. Stern
hstern@sgklaw.com
Joel M. Silverstein
jsilverstein@sgklaw.com
325 Columbia Turnpike, Suite 110
Florham Park, New Jersey  07932-0992
Telephone: 973.535.1900
Facsimile: 973.535.9664

GIBSON, DUNN & CRUTCHER LLP
Theodore J. Boutrous, Jr., *pro hac vice forthcoming*
tboutrous@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

Joshua D. Dick, *pro hac vice forthcoming*
jdick@gibsondunn.com
555 Mission Street

14

San Francisco, CA 94105
Telephone: 415.393.8200
Facsimile: 415.374.8451

*Attorneys for Defendants*
*Chevron Corporation and Chevron U.S.A. Inc.*


*/s/ Loly G. Tor*
Loly G. Tor
K&L Gates LLP
One Newark Center, Tenth Floor
Newark, NJ 07102
Tel.: (973) 848-4000
Fax: (973) 848-4001
Email: loly.tor@klgates.com

David C. Frederick (*pro hac vice*)
James M. Webster, III (*pro hac vice*)
Daniel S. Severson (*pro hac vice*)
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel.: (202) 326-7900
Fax: (202) 326-7999
Email: dfrederick@kellogghansen.com
Email: jwebster@kellogghansen.com
Email: dseverson@kellogghansen.com

*Counsel for Shell plc and*
*Shell USA, Inc. (f/k/a Shell Oil Company)*


ARNOLD & PORTER
KAYE SCHOLER LLP

 /s/ Paul J. Fishman
Paul J. Fishman (#036611983)
One Gateway Center, Suite 1025
Newark, NJ 07102-5310
Tel:  (973) 776-1901
Fax:  (973) 776-1919
paul.fishman@arnoldporter.com

Samuel N. Lonergan (#031972001)

15

Nancy G. Milburn (*pro hac vice*)
Diana E. Reiter (*pro hac vice*)
250 West 55th Street
New York, NY 10019-9710
Tel:  (212) 836-8000
Fax:  (212) 836-8689
samuel.lonergan@arnoldporter.com
nancy.milburn@arnoldporter.com
diana.reiter@arnoldporter.com

John D. Lombardo (*pro hac vice*)
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Tel:  (213) 243-4000
Fax:  (213) 243-4199
john.lombardo@arnoldporter.com

Jonathan W. Hughes (*pro hac vice*)
3 Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Tel:  (415) 471-3156
Fax:  (415) 471-3400
jonathan.hughes@arnoldporter.com

WALSH PIZZI O'REILLY FALANGA LLP

Liza M. Walsh (#013621985)
Tricia B. O'Reilly (#051251992)
Francis W. Yook (#135182015)
Three Gateway Center, 15th Floor
Newark, NJ 07102-4056
Tel: (973) 757-1100
Fax: (973) 757-1090
lwalsh@walsh.law
toreilly@walsh.law
fyook@walsh.law

*Attorneys for Defendants BP P.L.C.*
*and BP AMERICA INC.*

Theodore V. Wells Jr.
Daniel J. Toal (*pro hac vice*)
Yahonnes Cleary (*pro hac vice*)
Caitlin Grusauskas (*pro hac vice*)
PAUL, WEISS, RIFKIND,

WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990
Email: twells@paulweiss.com
Email: dtoal@paulweiss.com
Email: ycleary@paulweiss.com
Email: cgrusauskas@paulweiss.com

*Attorneys for Defendants,*
*Exxon Mobil Corp. and ExxonMobil Oil Corp.*


RIKER DANZIG LLP
By:      /s/ Anthony J. Zarillo, Jr.
Anthony J. Zarillo, Jr. (azarillo@riker.com)
Jeffrey M. Beyer (jbeyer@riker.com)
Youngjin Park (ypark@riker.com)
One Speedwell Avenue
Morristown, NJ  07962-1981
(973) 538-0800

MCGUIREWOODS LLP
Brian D. Schmalzbach*
800 East Canal Street
Richmond, VA 23219
(804) 775-4746
bschmalzbach@mcguirewoods.com

Kathryn M. Barber*
800 East Canal Street
Richmond, VA 23219
(804) 775-1227
kbarber@mcguirewoods.com

* *Pro hac vice* application forthcoming

*Attorneys for Defendant*
*American Petroleum Institute*


By.  /s/ Jeffrey S. Chiesa
Jeffrey S. Chiesa

17

Jeffrey S. Chiesa (NJ Bar No. 031271990)
  jchiesa@csglaw.com
Dennis M. Toft (NJ Bar No. 019071982)
  dtoft@csglaw.com
Michael K. Plumb (NJ Bar No. 003622011)
  mplumb@csglaw.com
CHIESA SHAHINIAN & GIANTOMASI PC
One Boland Drive
West Orange, NJ 07052
(973) 325-1500

Rebecca Weinstein Bacon*
  rweinstein.bacon@bartlitbeck.com
BARTLIT BECK LLP
Courthouse Place
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400

Daniel R. Brody*
  dan.brody@bartlitbeck.com
Jameson R. Jones*
  jameson.jones@bartlitbeck.com
BARTLIT BECK LLP
1801 Wewatta Street
Suite 1200
Denver, CO 80202
(303) 592-3120

LATHAM & WATKINS LLP
Steven M. Bauer (*pro hac vice forthcoming*)
Margaret A. Tough (*pro hac vice forthcoming*)
Katherine A. Rouse (*pro hac vice forthcoming*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Tel.: (415) 391-0600
Fax: (415) 395-8095
steven.bauer@lw.com
margaret.tough@lw.com
katherine.rouse@lw.com

*\* Pro hac vice*

*Attorneys for Defendants ConocoPhillips and
  ConocoPhillips Company*

By: *s/ Diane Fleming Averell*
PORZIO, BROMBERG & NEWMAN, P.C.
Diane Fleming Averell (DA3899)
100 Southgate Parkway
P.O. Box 1997
Morristown, NJ 07962-1997
Tel.: (973) 538-4006
Fax: (973) 538-5146
dfaverell@pbnlaw.com

LATHAM & WATKINS LLP
Steven M. Bauer (*pro hac vice forthcoming*)
Margaret A. Tough (*pro hac vice forthcoming*)
Katherine A. Rouse (*pro hac vice forthcoming*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Tel.: (415) 391-0600
Fax: (415) 395-8095
steven.bauer@lw.com
margaret.tough@lw.com
katherine.rouse@lw.com

*Attorneys for Defendants Phillips 66 and Phillips 66
Company*

19