**MATTHEW J. PLATKIN**
**ATTORNEY GENERAL OF NEW JERSEY**
Andrew Reese (Attorney ID No. 024662000)
Monisha A. Kumar (Attorney ID No. 900212012)
Daniel P. Resler (Attorney ID No. 324172020)
Monica E. Finke (Attorney ID No. 332512020)
  Deputy Attorneys General
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 093
Trenton, New Jersey 08625-0093
Tel.:   (609) 376-2789
Email: Andrew.Reese@law.njoag.gov
        Monisha.Kumar@law.njoag.gov
        Daniel.Resler@law.njoag.gov
        Monica.Finke@law.njoag.gov

**SHER EDLING LLP**
Victor M. Sher (*pro hac vice* forthcoming)
Matthew K. Edling (*pro hac vice* forthcoming)
Katie H. Jones (*pro hac vice* forthcoming)
Quentin C. Karpilow (*pro hac vice* forthcoming)
Paul Stephan (Attorney ID No. 275272018)
Naomi D. Wheeler *(pro hac vice* forthcoming)
100 Montgomery Street, Suite 1410
San Francisco, CA 94104
Tel:    (628) 231-2500
Email: vic@sheredling.com
        matt@sheredling.com
        katie@sheredling.com
        quentin@sheredling.com
        paul@sheredling.com
        naomi@sheredling.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MATTHEW J. PLATKIN, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, et al. <br> *Plaintiffs*, <br> v. <br> EXXON MOBIL CORPORATION; EXXONMOBIL OIL CORPORATION; BP P.L.C.; BP AMERICA INC.; CHEVRON | No. 3:22-cv-06733-ZNQ-RLS <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY** <br><br> Hon. Zahid N. Quraishi, U.S.D.J. <br> Hon. Rukhsanah L. Singh, U.S.M.J. |

CORPORATION; CHEVRON U.S.A. INC.;
CONOCOPHILLIPS; CONOCOPHILLIPS
COMPANY; PHILLIPS 66; PHILLIPS 66
COMPANY; SHELL PLC; SHELL OIL
COMPANY; and AMERICAN PETROLEUM
INSTITUTE,

    *Defendants*.

## <u>TABLE OF CONTENTS</u>

I.   **INTRODUCTION** ............................................................................................. **1**

II.  **BACKGROUND** .............................................................................................. **2**

III. **LEGAL STANDARDS** .................................................................................. **5**

    A.  Stay Pending Appeal ................................................................................ 5

    B.  Stay Under Court's Inherent Authority .................................................... 6

IV. **ARGUMENT** ................................................................................................. **7**

    A.  The Court Should Follow the Third Circuit's Lead and Deny a Stay. ............ 7

    B.  The Court Should Apply the Standard for Stays Pending Appeal. ................ 8

    C.  Defendants Do Not Come Close to Justifying a Stay Pending Appeal. ......... 9

        1.  Defendants Have Little Likelihood of Success in the Supreme Court. .......... 9

            a.  Every Court to Consider Defendants' Removal Arguments Has
Unanimously Rejected Them. ...................................................... 10

            b.  The Supreme Court's Call for the Solicitor General's Views Does
Not Help Defendants Satisfy the Minimum Showing of Success. ................. 12

        2.  Defendants Will Not Suffer Irreparable Injury Absent a Stay. .............. 14

        3.  A Stay Would Substantially Harm Plaintiffs and Contravene the Public
Interest. ...................................................................................... 17

    D.  The Court Should Not Stay This Case Under Its Inherent Authority. ............ 18

        1.  A Stay Would Unduly Prejudice Plaintiffs and New Jersey Residents. .......... 20

        2.  A Stay Would Not Cause Defendants Clear Hardship or Inequity. ........... 20

        3.  A Stay Will Not Simplify Any Issues on the Merits, and Is Unlikely to
Even Simplify a Single Asserted Basis for Removal. ................................ 22

        4.  The Stage of This Litigation Does Not Suffice to Warrant a Stay. ........... 23

        5.  Conclusion ................................................................................. 24

V.   **CONCLUSION** ............................................................................................. **24**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott Diabetes Care, Inc. v. DexCom, Inc.*,
No. 06–514 GMS, 2007 WL 2892707 (D. Del. Sept. 30, 2007) ............................................. 19

*Akishev v. Kapustin*,
23 F. Supp. 3d 440 (D.N.J. 2014) ...................................................................................... *passim*

*Am. Elec. Power Co. v. Connecticut*,
564 U.S. 410 (2011)........................................................................................................... 11, 13

*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006).................................................................................................................. 23

*Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*,
405 F. Supp. 3d 947 (D. Colo. 2019)....................................................................................... 4, 10

*Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*,
423 F. Supp. 3d 1066 (D. Colo. 2019)....................................................................................... 16

*Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*,
25 F.4th 1238 (10th Cir. 2022) ....................................................................................... 10, 11, 12

*Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am., AFL-CIO*,
544 F.2d 1207 (3d Cir. 1976) ......................................................................................... 8, 19, 22

*Bizzaro v. Ocean Cty.*,
No. 07–5665 (FLW), 2009 WL 3817927 (D.N.J. Nov. 16, 2009) ....................................... 8, 18

*California v. BP P.L.C.*,
Nos. C 17-06011 WHA, C 17-06012 WHA, 2018 WL 1064293
(N.D. Cal. Feb. 27, 2018) ......................................................................................................... 4

*Cammie's Spectacular Salon v. Mid-Century Ins. Co.*,
No. 20-12324 (RBK/MJS), 2022 WL 488945 (D.N.J. Feb. 17, 2022)............................... 21, 23

*City & Cty. of Honolulu v. Sunoco LP*,
Nos. 20-cv-00163-DKW-RT, 20-cv-00470-DKW-KJM, 2021 WL 531237
(D. Haw. Feb. 12, 2021) ....................................................................................................... 4, 10

*City & Cty. of Honolulu v. Sunoco LP*,
Nos. 20-cv-00163-DKW-RT, 20-cv-00470-DKW-KJM, 2021 WL 839439
(D. Haw. Mar. 5, 2021)................................................................................................... 4, 11, 13

*City & Cty. of Honolulu v. Sunoco LP*,
Nos. 21-15313, 21-15318, 2021 WL 1017392 (9th Cir. Mar. 13, 2021)................................. 15

*City of Annapolis v. BP P.L.C.*,
No. ELH-21-772, 2021 WL 2000469 (D. Md. May 19, 2021) ......................................... 14, 19

*City of Annapolis v. BP P.L.C.*,
   Nos. SAG-21-00772, SAG-21-01323, 2022 WL 4548226 (D. Md. Sept. 29, 2022) .......... 4, 10

*City of Hoboken v. Chevron Corp.*,
   45 F.4th 699 (3d Cir. 2022) ......................................................................... 1, 11, 12

*City of Hoboken v. Exxon Mobil Corp.*,
   558 F. Supp. 3d 191 (D.N.J. 2021) .............................................................. 3, 4, 9, 10

*City of Milwaukee v. Illinois*,
   451 U.S. 304 (1981) ................................................................................................ 11

*City of New York v. Chevron Corp.*,
   993 F.3d 81 (2d Cir. 2021) ...................................................................................... 11

*City of Oakland v. BP PLC*,
   969 F.3d 895 (9th Cir. 2020) .................................................................................. 10

*City of Oakland v. BP P.L.C.*,
   Nos. C 17-06011 WHA, C 17-06012 WHA, 2022 WL 14151421
    (N.D. Cal. Oct. 24, 2022)......................................................................................... 4

*Conkright v. Frommert*,
   556 U.S. 1401 (2009)............................................................................................... 12

*Connecticut v. Exxon Mobil Corp.*,
   No. 3:20-cv-1555 (JCH), 2021 WL 2389739 (D. Conn. June 2, 2021) ................ 4, 10

*Costantino v. City of Atlantic City*,
   No. 13–6667 (RBK/JS), 2015 WL 668161 (D.N.J. Feb. 17, 2015).................... 17, 20

*CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*,
   381 F.3d 131 (3d Cir. 2004) .............................................................................. 20, 24

*Cty. of San Mateo v. Chevron Corp.*,
   294 F. Supp. 3d 934 (N.D. Cal. 2018) .................................................................. 4, 10

*Cty. of San Mateo v. Chevron Corp.*,
   32 F.4th 733 (9th Cir. 2022) ................................................................................... 10

*Delaware v. BP Am. Inc.*,
   578 F. Supp. 3d 618 (D. Del. 2022)....................................................................... 4, 10

*Depomed Inc. v. Purdue Pharma L.P.*,
   No. 13–571 (JAP), 2014 WL 3729349 (D.N.J. July 25, 2014) ............................... 19

*District of Columbia v. Exxon Mobil Corp.*,
   __ F. Supp. 3d __, 2022 WL 16901988 (D.D.C. Nov. 12, 2022) ....................... 4, 10

*Divine Fish House, Inc. v. BP, P.L.C.*,
   No. 2:10–cv–01461, 2010 WL 2802505 (D.S.C. July 14, 2010) ............................ 19

*Dumas v. Clarke*,
   324 F. Supp. 3d 716 (E.D. Va. 2018) ....................................................................... 9

*Estate of Maglioli v. Andover Subacute Rehabilitation Ctr. I*,
 No. CV 21-2114 (KM)(JBC), 2021 WL 2525714 (D.N.J. June 18, 2021) ................. 15, 19, 22

*Fresenius Kabi USA, LLC v. Fera Pharms., LLC*,
 No. 15-3654, 2017 WL 2213123 (D.N.J. May 19, 2017).......................................... 21

*Gadsden v. United States*,
 294 F. Supp. 3d 516 (E.D. Va. 2018) ........................................................................ 9

*Gesture Tech. Partners, LLC v. LG Elecs. Inc.*,
 No. 21-19234 (JMV) (MAH), 2022 WL 1002101 (D.N.J. Apr. 4, 2022) ................................ 19

*Gold v. Johns-Manville Sales Corp.*,
 723 F.2d 1068 (3d Cir. 1983) .................................................................................... 6

*Hagans v. Lavine*,
 415 U.S. 528 (1974)................................................................................................... 10

*In re Insulin Pricing Litig.*,
 No. 3:17-cv-699 (BRM) (LHG), 2020 WL 5642002 (D.N.J. Sept. 22, 2020) .......................... 7

*In re Revel AC, Inc.*,
 802 F.3d 558 (3d Cir. 2015) .......................................................................... *passim*

*In re Sanctuary Belize Litig.*,
 No. CV PJM 18-3309, 2019 WL 7597770 (D. Md. Nov. 21, 2019) ......................... 9

*Int'l Paper Co. v. Ouellette*,
 479 U.S. 481 (1987).................................................................................................. 11

*Interstate Serv. Provider, Inc. v. Jordan*,
 No. 4:21-cv-267, 2021 WL 2355384 (E.D. Tex. June 9, 2021) ........................................ 20, 23

*Landis v. N. Am. Co.*,
 299 U.S. 248 (1936)................................................................................................... 6, 20

*Massachusetts v. Exxon Mobil Corp.*,
 462 F. Supp. 3d 31 (D. Mass. 2020)......................................................................... 4, 10

*Mayor & City Council of Baltimore v. BP P.L.C.*,
 388 F. Supp. 3d 538 (D. Md. 2019).......................................................................... 4, 10

*Mayor & City Council of Baltimore v. BP P.L.C.*,
 No. ELH-18-2357, 2019 WL 3464667 (D. Md. July 31, 2019) ........................................ 16, 21

*Mayor & City Council of Baltimore v. BP P.L.C.*,
 31 F.4th 178 (4th Cir. 2022) ...................................................................... 4, 10, 11

*McAnaney v. Smithkline Beecham Corp.*,
 No. 12-5120 (WHW), 2012 WL 12906184 (D.N.J. Oct. 23, 2012) .................................. 19, 24

*MEI, Inc. v. JCM Am. Corp.*,
 No. 09-351, 2009 WL 3335866 (D.N.J. Oct. 15, 2009) ......................................... 19

iv

*Metro. Life Ins. Co. v. Lawless*,
    No. 19-13688(MAS)(ZNQ), 2019 WL 6050755 (D.N.J. Nov. 15, 2019) ......................... 7, 19

*Mey v. Got Warranty, Inc.*,
    No. 5:15-CV-101, 2016 WL 1122092 (N.D. W.Va. Mar. 22, 2016) ...................................... 19

*Michelin Retirement Plan v. Dilworth Paxson, LLP*,
    No. 6:16-3604-HMH-JDA, 2017 WL 2531845 (D.S.C. June 12, 2017)................................. 19

*Minnesota v. Am. Petroleum Inst.*,
    No. 20-1636 (JRT/HB), 2021 WL 1215656 (D. Minn. Mar. 31, 2021) ............................. 4, 10

*Minnesota v. Am. Petroleum Inst.*,
    No. 20-1636 (JRT/HB), 2021 WL 3711072 (D. Minn. Aug. 20, 2021)............................ 14, 19

*Moeller v. Bradford Cty.*,
    No. 3:CV-05-0334, 2007 WL 431889 (M.D. Pa. Feb. 5, 2007).............................................. 20

*Neste Oil OYJ v. Dynamic Fuels, LLC*,
    2013 WL 3353984 (D. Del. July 2, 2013) .............................................................................. 19

*Nken v. Holder*,
    556 U.S. 418 (2009).................................................................................................... *passim*

*Nussbaum v. Diversified Consultants, Inc.*,
    No. 15–600, 2015 WL 5707147 (D.N.J. Sept. 28, 2015) ................................................ 21, 24

*Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*,
    692 F.3d 283 (3d Cir. 2012) ................................................................................................. 23

*Renegotiation Bd. v. Bannercroft Clothing Co.*,
    415 U.S. 1 (1974).................................................................................................................. 15

*Rhode Island v. Chevron Corp.*,
    393 F. Supp. 3d 142 (D.R.I. 2019) .................................................................................... 4, 10

*Rhode Island v. Shell Oil Prods. Co., L.L.C.*,
    35 F.4th 44 (1st Cir. 2022)................................................................................................ 10, 11

*Sam L. Majors Jewelers v. ABX, Inc.*,
    117 F.3d 922 (5th Cir. 1997) ................................................................................................ 11

*Sampson v. Murray*,
    415 U.S. 61 (1974)................................................................................................................ 15

*Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc.*,
    No. 3:09cv791, 2010 WL 1946262 (E.D. Va. May 10, 2010) .............................. 19, 20, 21, 23

*Virginia ex rel. Integra Rec LLC v. Countrywide Secs. Corp.*,
    No. 3:14CV706, 2015 WL 222312 (E.D. Va. Jan. 14, 2015).................................................. 19

*Winston-Salem/Forsyth Cty. Bd. of Ed. v. Scott*,
    404 U.S. 1221 (1971)............................................................................................................ 5

**Other Authorities**

15A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3914.11.1
(3d ed. Sept. 2022 update) ...................................................................................... 16

*An Empirical Analysis of Supreme Court Certiorari Petition Procedures: The Call for
Response and the Call for the Views of the Solicitor General*,
16 Geo. Mason L. Rev. 237 (2009) ........................................................................... 12

## I.    INTRODUCTION

Plaintiffs Matthew J. Platkin, Attorney General of the State of New Jersey; the New Jersey Department of Environmental Protection; and Cari Fais, Acting Director of the New Jersey Division of Consumer Affairs ("Plaintiffs") filed this suit in state court, alleging that Defendants executed a multi-decade campaign to mislead the public about climate change and their fossil-fuel products' central role in causing it. Defendants removed, and Plaintiffs moved to remand because, as the Third Circuit recently affirmed, claims like Plaintiffs', lodged "in state court based only on state tort [and consumer protection] law[s]," provide "no federal hook that lets defendants remove them to federal court." *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 706 (3d Cir. 2022). Defendants seek to stay proceedings while they petition for certiorari from the Third Circuit's affirmance in *Hoboken*, and from similar affirmances of remand orders in the First, Fourth, Ninth, and Tenth Circuits. But the Third Circuit itself refused to stay its mandate in *Hoboken*—to which all Defendants were parties—pending Defendants' various certiorari petitions. *See City of Hoboken*, No. 21-2728, Dkt. 146 & 147 (3d Cir. Oct. 12, 2022) (denying stay and issuing mandate). Remand has since been effectuated in the two cases consolidated in that appeal, and both are now proceeding in state court. *See City of Hoboken v. Exxon Mobil Corp.*, No. 2:20-cv-14243-JMV-MF, Dkt. 142 (D.N.J. Oct. 19, 2022) (transmitting remand order to state court); *Delaware v. B.P. Am. Inc.*, No. 1:20-cv-01429-LPS, Dkt. 145 (D. Del. Oct. 19, 2022) (same). The circumstances have not changed since the Third Circuit's rulings, and the Court should not put this case on hold before considering its own subject-matter jurisdiction. The Court should instead deny Defendants' Motion to Stay Proceedings ("Mot."), and allow the parties to brief Plaintiffs' motion to remand.

Even if the Third Circuit had not recently denied a stay in a materially similar case involving the same Defendants at the same procedural juncture, a stay would still be patently unwarranted here. Defendants do not come close to satisfying their burden to justify a stay pending

appeal, which is the standard the Court should apply to Defendants' Motion. *See infra* Part IV.B. First, Defendants fail to show they are likely to obtain certiorari review, much less reversal, of either *Hoboken* or the five other circuit decisions rejecting the same jurisdictional arguments Defendants raise here. Second, Defendants will not suffer irreparable harm; ordinary litigation expenses are *per se* not irreparable harm, and Defendants identify no other meaningful hardship they might face. Third, a stay would prejudice Plaintiffs and contravene the public interest by risking loss of discoverable evidence from elderly witnesses and decades-old documents, while hindering Plaintiffs' ability to protect consumers from Defendants' ongoing deception.

Defendants also fall well short of justifying the "extraordinary remedy" of a stay under the Court's inherent discretionary docket-management authority. *See Akishev v. Kapustin*, 23 F. Supp. 3d 440, 445 (D.N.J. 2014) (citation omitted). A stay would unduly prejudice Plaintiffs and generate pointless delay. Conversely, denying a stay and proceeding with the litigation will not impose clear hardship or inequity on Defendants. A stay will not simplify a single issue in Plaintiffs' motion to remand, much less any issues on the merits of Plaintiffs' underlying claims. Given the slim chance that Defendants will find success at the Supreme Court, judicial economy likewise counsels in favor of allowing the case to move forward. Any potential benefit from a stay is too uncertain to counterbalance the harms it would impose on Plaintiffs and the public. The Court should deny the stay and allow this case to proceed.

## II.   BACKGROUND

Plaintiffs filed suit in state court on October 18, 2022, bringing claims for failure to warn, negligence, impairment of the public trust, trespass, public and private nuisance, and violations of New Jersey's Consumer Fraud Act ("CFA"). *See generally* Complaint, Dkt. 1-2 ("Compl."). Plaintiffs assert that Defendants have known for over 50 years that the intended use of their fossil

fuel products creates greenhouse gas emissions that cause climate change, presenting catastrophic risks in New Jersey, as elsewhere. *Id.* ¶¶ 1, 5, 7–17.

Armed with this knowledge, Defendants took steps to protect their own assets from the impacts of climate change, but they provided no warnings to consumers or the public about their products' known dangers. *Id.* ¶¶ 1, 5–6. Instead, Defendants embarked on a decades-long campaign to disseminate false and misleading information about climate change; discredit the scientific consensus on climate change; sow doubt in the minds of consumers and the public about the consequences of using their products; and delay the transition to a lower-carbon future—all while promoting increased use of their products through false and misleading advertising. *Id.* ¶¶ 1, 6. Defendants' strategy hyper-inflated demand for fossil fuels, increasing greenhouse gas emissions and exacerbating climate change impacts across New Jersey and beyond. *See, e.g.*, *id.* ¶¶ 1, 7–17, 50. Their campaign of misleading marketing and deceptive promotion continues to this day, including through use of sophisticated "greenwashing" campaigns. *Id.* ¶¶ 1, 4, 6, 158–232. Those campaigns misleadingly promote Defendants as sustainable energy companies, while failing to disclose that their renewable energy investments represent a negligible share of their overall business and that Defendants continue to ramp up fossil fuel production. *Id.* ¶¶ 6, 158–59. Defendants also advertise that certain fossil fuel products are "green" or "clean," while concealing the fact that those very same products are leading causes of climate change. *Id.* ¶¶ 6, 158.

On November 22, 2022, Defendants removed to this Court on multiple grounds. *See* Notice of Removal, Dkt. 1. Each of Defendants' theories has been rejected by numerous other courts in similar climate-deception cases, including another court in this District whose opinion the Third Circuit affirmed. *See City of Hoboken v. Exxon Mobil Corp.*, 558 F. Supp. 3d 191 (D.N.J. 2021),

*aff'd sub nom. City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022).[1] Every court in a similar case faced with the jurisdictional bases Defendants assert here has granted remand.[2]

As relevant here, the district court in *Hoboken* granted the plaintiff city's motion to remand, rejecting each of the five removal arguments Defendants assert in this case. *City of Hoboken*, 558 F. Supp. 3d at 200–09. The Third Circuit affirmed, 45 F.4th 699, and denied Defendants' petition for rehearing *en banc*, *City of Hoboken v. Chevron Corp., et al.*, No. 21-2728, Dkt. 142 (3d Cir. Sept. 30, 2022). Defendants then moved to stay the Third Circuit's mandate pending their anticipated petition for certiorari, which the Third Circuit also denied. Dkt. 143, 146, 147. The

---

[1] *See also Cty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934 (N.D. Cal. 2018), *aff'd*, 32 F.4th 733 (9th Cir. 2022), *cert. petition filed* (Nov. 22, 2022) (No. 22-495); *Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538 (D. Md. 2019), *aff'd*, 31 F.4th 178 (4th Cir. 2022), *cert. petition filed* (Oct. 14, 2022) (No. 22-361); *Rhode Island v. Chevron Corp.*, 393 F. Supp. 3d 142 (D.R.I. 2019), *aff'd sub nom. Rhode Island v. Shell Oil Prods. Co., L.L.C.*, 35 F.4th 44 (1st Cir. 2022), *cert. petition filed* (Dec. 2, 2022) (No. 22-524); *Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*, 405 F. Supp. 3d 947 (D. Colo. 2019), *aff'd*, 25 F.4th 1238 (10th Cir. 2022), *cert. petition filed* (June 8, 2022) (No. 21-1550); *Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31 (D. Mass. 2020); *City & Cty. of Honolulu v. Sunoco LP*, Nos. 20-cv-00163-DKW-RT, 20-cv-00470-DKW-KJM, 2021 WL 531237 (D. Haw. Feb. 12, 2021), *aff'd*, 39 F.4th 1101 (9th Cir. 2022), *cert. petition filed* (Dec. 2, 2022) (No. 22-523); *Minnesota v. Am. Petroleum Inst.*, No. 20-1636 (JRT/HB), 2021 WL 1215656 (D. Minn. Mar. 31, 2021), *appeal filed*, No. 21-1752 (8th Cir. Apr. 5, 2021); *Connecticut v. Exxon Mobil Corp.*, No. 3:20-cv-1555 (JCH), 2021 WL 2389739 (D. Conn. June 2, 2021), *appeal filed*, No. 21-1446 (2d Cir. June 8, 2021); *Delaware v. BP Am. Inc.*, 578 F. Supp. 3d 618 (D. Del. 2022), *aff'd sub nom. City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022); *City of Annapolis v. BP P.L.C.*, Nos. SAG-21-00772, SAG-21-01323, 2022 WL 4548226 (D. Md. Sept. 29, 2022), *appeal filed*, No. 22-2082 (4th Cir. Oct. 14, 2022); *District of Columbia v. Exxon Mobil Corp.*, ___ F. Supp. 3d ___, 2022 WL 16901988 (D.D.C. Nov. 12, 2022), *appeal filed*, No. 22-7163 (D.C. Cir. Nov. 30, 2022).

[2] Although Defendants "achieved one, fleeting success on the issue of removal" in an outlier district court decision, "[e]ven that success . . . has now been overturned" by the Ninth Circuit. *City & Cty. of Honolulu v. Sunoco LP*, Nos. 20-cv-00163-DKW-RT, 20-cv-00470-DKW-KJM, 2021 WL 839439, at *2 n.3 (D. Haw. Mar. 5, 2021) (citing *California v. BP P.L.C.*, Nos. C 17-06011 WHA, C 17-06012 WHA, 2018 WL 1064293 (N.D. Cal. Feb. 27, 2018), *vacated and remanded sub nom City of Oakland v. BP PLC*, 969 F.3d 895 (9th Cir. 2020), *cert. denied sub nom. Chevron Corp. v. City of Oakland*, 141 S. Ct. 2776 (2021)). On remand from the Ninth Circuit, that district court has since granted the plaintiffs' renewed motions to remand. *City of Oakland v. BP P.L.C.*, Nos. C 17-06011 WHA, C 17-06012 WHA, 2022 WL 14151421 (N.D. Cal. Oct. 24, 2022).

district court accordingly lifted a stay it had entered pending appeal and executed its remand order. *City of Hoboken*, No. 2:20-cv-14243-JMV-MF, Dkt. 141 & 142 (D.N.J. Oct. 19, 2022).

Plaintiffs moved to remand this matter on December 21, 2022.[3] The following day, Defendants moved to stay proceedings pending resolution of their anticipated certiorari petition in *Hoboken*, plus petitions from five other circuit decisions in similar cases: *Suncor Energy (U.S.A.) Inc. v. Board of County Commissioners of Boulder County*, No. 21-1550 ("*Boulder*"), *BP p.l.c. v. Mayor & City Council of Baltimore*, No. 22-361 ("*Baltimore*"), *Chevron Corp. v. County of San Mateo*, No. 22-495 ("*San Mateo*"), *Shell Oil Prods. Co., L.L.C. v. Rhode Island*, No. 22-524 ("*Rhode Island*"), and *Sunoco LP v. City & County of Honolulu*, No. 22-523 ("*Honolulu*").

## III. LEGAL STANDARDS

### A. Stay Pending Appeal

As discussed below, the Court should analyze Defendants' Motion under the standard applicable to a stay pending appeal, because Defendants' asserted basis for the stay is their petition for certiorari from a decision in the same jurisdiction, in a case involving the same Defendants and the same issues presented here. A stay pending appeal "is not a matter of right." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (citation omitted). Instead, the moving party bears a "heavy burden" to justify "such extraordinary relief." *Winston-Salem/Forsyth Cty. Bd. of Ed. v. Scott*, 404 U.S. 1221, 1231 (1971) (Burger, C.J., in chambers). Courts consider four "traditional" factors in weighing a motion for a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a

---

[3] Pursuant to the parties' stipulation as granted, the Court will receive memoranda supporting and opposing Plaintiffs' motion to remand on or about May 3, 2023. Dkt. 36 at 4 ¶ 3 (Dec. 5, 2022).

stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434 (citation omitted).

The Third Circuit "ha[s] viewed favorably what is often referred to as the 'sliding-scale' approach" to balancing these factors. *In re Revel AC, Inc.*, 802 F.3d 558, 569 (3d Cir. 2015) (citations omitted). However, because "the first two factors are the most critical, if 'the chance of success on the merits is only better than negligible' and the 'possibility of irreparable injury' is low, a stay movant's request fails." *Id.* at 570 (quoting *Nken*, 556 U.S. at 434) (cleaned up). The movant therefore must "make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) *and* (b) will suffer irreparable harm absent a stay," before the court considers substantial harm to other parties and the public interest. *Id.* at 571.

### B.     Stay Under Court's Inherent Authority

"A district court's inherent authority 'to control the disposition of the causes on its docket with economy of time and effort' implicitly carries with it 'the power to stay proceedings.'" *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 445 (D.N.J. 2014) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)). Like a stay pending appeal, a stay pursuant to a court's docket-management authority "is not a matter of right," *id.* at 449 (quoting *Nken*, 556 U.S. at 433), and courts must remain "mindful that the stay of a civil proceeding constitutes 'an extraordinary remedy,'" *id.* at 445 (citation omitted). "It is well settled that before a stay may be issued, the [movant] must demonstrate 'a clear case of hardship or inequity,' if there is 'even a fair possibility' that the stay would work damage on another party." *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1075–76 (3d Cir. 1983) (quoting *Landis*, 299 U.S. at 255).

Courts in the Third Circuit "generally consider four factors when determining whether to grant [such] a stay, including: '(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether denial of the stay would create a clear case of

hardship or inequity for the moving party; (3) whether a stay would simplify the issues and the trial of the case; and (4) whether discovery is complete and/or a trial date has been set.'" *In re Insulin Pricing Litig.*, No. 3:17-cv-699 (BRM) (LHG), 2020 WL 5642002, at \*8 (D.N.J. Sept. 22, 2020) (quoting *Akishev*, 23 F. Supp. 3d at 446). However, "the Court is not constrained to those considerations, and may consider other circumstances present in the case." *Metro. Life Ins. Co. v. Lawless*, No. 19-13688(MAS)(ZNQ), 2019 WL 6050755, at \*7 (D.N.J. Nov. 15, 2019) (citing *Akishev*, 23 F. Supp. 3d at 446–47).

## IV.   ARGUMENT

### A.    The Court Should Follow the Third Circuit's Lead and Deny a Stay.

Defendants offer precisely the same arguments for a stay here that the Third Circuit declined to adopt in *Hoboken*, and this Court should also reject them. Defendants argued there was "a considerable likelihood" the Supreme Court would grant certiorari and ultimately reverse in light of a purported circuit split; without a stay, Defendants "could be deprived of their right" to a federal forum and "could be forced to litigate" in state court, "which could entail resolving numerous threshold and dispositive motions, as well as potentially extensive discovery"; a stay supposedly would not harm the City; and a stay would further judicial economy. *City of Hoboken*, No. 21-2728, Dkt. 143, at \*3–11 (Sept. 30, 2022) (motion to stay mandate). Defendants submitted the Supreme Court's call for the views of the Solicitor General in the *Boulder* petition as supplemental authority, arguing the request "ma[de] clear that the question is substantial" and greatly increased the likelihood certiorari will be granted. *City of Hoboken*, No. 21-2728, Dkt. 144, at \*1 (Oct. 4, 2022) (cleaned up). The Third Circuit nonetheless denied a stay. *City of Hoboken*, No. 21-2728, Dkt. 146 (3d Cir. Oct. 12, 2022).

Defendants' arguments here are indistinguishable. They say "[t]here is a substantial possibility that the Supreme Court will grant certiorari" and reverse, in light of the same purported

circuit split and the Supreme Court's call for the Solicitor General's views in *Boulder*. *See* Mot. at 2, 4–8. Defendants likewise contend that, absent a stay, they "may be forced to proceed in state court" and may be "denied their right to a federal forum," while having to "undergo[] meaningful (and costly) litigation in state court—including substantive motion practice and possibly even discovery," while a stay would promote judicial economy and would not prejudice Plaintiffs. *See id.* at 10–14. The Third Circuit found those circumstances did not justify staying remand in *Hoboken*, and they no more justify staying proceedings here.

The Court has discretion to manage its docket, and persuasive guidance from the Third Circuit demonstrates that a stay is not warranted. The Court can and should deny the Motion on that basis alone.

**B.     The Court Should Apply the Standard for Stays Pending Appeal.**

Although Defendants urge the Court to stay this case under its inherent authority, *see* Mot. at 3–4, the Court should evaluate the requested stay under the Supreme Court's well-established standard for a stay pending appeal as articulated in *Nken*. Courts in the Third Circuit sometimes exercise their inherent authority to stay a case "pending resolution of purportedly related litigation," if the other litigation "would substantially impact or otherwise render moot the present action." *Akishev*, 23 F. Supp. 3d at 446 (citing *Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976)). Here, however, Defendants' basis for a stay is their own petition for review in a case arising in this District presenting the same issues, and applying the stay pending appeal standard is warranted. *See Bizzarro v. Ocean Cty.*, No. 07–5665 (FLW), 2009 WL 3817927, at *1–2 (D.N.J. Nov. 16, 2009) (applying *Nken* factors to

evaluate motion to stay proceedings "pending a decision from the Third Circuit in [another case], which Defendants contend will ultimately determine the law of this case").[4]

Importantly, every Defendant here is a party to one or more of the certiorari petitions they cite as the basis for a stay, and all are parties to *Hoboken*. Any efficiency or uniformity benefits that might flow from Defendants' requested stay thus depend on *Defendants' own success* before the Supreme Court, on the exact same issues presented by Plaintiffs' pending motion to remand. Any harm Defendants might face if this Court denies a stay is identical to whatever harm they are already suffering in the *Hoboken* case following the Third Circuit's decision declining to stay its mandate. Under these circumstances, the Court should evaluate Defendants' Motion by applying the traditional factors for a stay pending appeal.

### C.    Defendants Do Not Come Close to Justifying a Stay Pending Appeal.

#### 1.    Defendants Have Little Likelihood of Success in the Supreme Court.

To satisfy the first "critical" stay factor, that Defendants must enjoy a substantial likelihood of success, "[i]t is not enough that the chance of success on the merits be better than negligible." *Nken*, 556 U.S. at 434 (cleaned up); *see also In re Revel AC, Inc.*, 802 F.3d at 571 (movant must show a "significantly better than negligible" chance of winning on the merits to satisfy the first factor). Defendants fail to make the minimum required showing of success before the Supreme Court, and their likelihood of obtaining certiorari review is highly speculative at best.

---

[4] *See also Gadsden v. United States*, 294 F. Supp. 3d 516, 517–519 (E.D. Va. 2018) (applying *Nken* factors to stay pending resolution of certiorari petition in another case raising the same legal issue); *Dumas v. Clarke*, 324 F. Supp. 3d 716, 716–18 (E.D. Va. 2018) (same); *In re Sanctuary Belize Litig.*, No. CV PJM 18-3309, 2019 WL 7597770, at *1–2 (D. Md. Nov. 21, 2019) (same).

## a. Every Court to Consider Defendants' Removal Arguments Has Unanimously Rejected Them.

Defendants contend "[t]here is a substantial possibility that the Supreme Court will grant certiorari in [*Boulder*] and find that these climate change-related cases are governed by federal common law" such that removal jurisdiction exists, in light of a purported circuit split over this jurisdictional theory. Mot. at 4–6. But there is no split of authority on the relevant question.

Five circuit courts and twelve district courts have rejected Defendants' federal-common-law removal theory.[5] The Fourth Circuit explained in detail why Defendants' "perplexing argument" for removal based on federal common law "defies logic." *Baltimore*, 31 F.4th at 204, 206. Defendants say the federal common law of interstate pollution nuisance "controls" Plaintiffs' claims, but pollution nuisance causes of action now "are nonexistent under federal common law because they are statutorily displaced" by the Clean Air Act and Clean Water Act. *Id.* at 204–06. Thus, "it is 'no longer open to discussion' that federal common law claims even exist to govern [Plaintiffs'] claims." *Id.* at 206 (quoting *Hagans v. Lavine*, 415 U.S. 528, 537 (1974)). "Since those claims are defunct, and invoking them is 'devoid of merit,' a federal court cannot exercise federal-question jurisdiction on that basis." *Id.* (citation omitted). The First, Ninth, and Tenth Circuits have similarly rejected Defendants' federal-common-law theory of removal jurisdiction. *See Rhode Island*, 35 F.4th at 53–56; *San Mateo*, 32 F.4th at 746–48; *Boulder*, 25 F.4th at 1257–62. And importantly, the Third Circuit in *Hoboken* "agree[d] with [its] sister circuits" and held that similar suits brought by the City of Hoboken and the State of Delaware "in state court based only on state

---

[5] *See San Mateo*, 294 F. Supp. 3d 934, *aff'd*, 32 F.4th 733; *Baltimore*, 388 F. Supp. 3d 538, *aff'd*, 31 F.4th 178; *Rhode Island*, 393 F. Supp. 3d 142, *aff'd*, 35 F.4th 44; *Boulder*, 405 F. Supp. 3d 947, *aff'd*, 25 F.4th 1238; *Massachusetts*, 462 F. Supp. 3d 31; *Oakland*, 969 F.3d 895; *Honolulu*, 2021 WL 531237, *aff'd*, 39 F.4th 1101; *Minnesota*, 2021 WL 1215656; *Connecticut*, 2021 WL 2389739; *City of Hoboken*, 558 F. Supp. 3d 191, *aff'd*, 45 F.4th 699; *Delaware*, 578 F. Supp. 3d 618, *aff'd*, 45 F.4th 699; *City of Annapolis*, 2022 WL 4548226; *District of Columbia*, 2022 WL 16901988.

tort law," are not "inherently federal" and do not arise under federal law for purposes of removal jurisdiction. *City of Hoboken*, 45 F.4th at 706–08. As another district court put it, "[a] batting average of .000" on Defendants' removal arguments "does not suggest a substantial case exists" to support a stay. *Honolulu*, 2021 WL 839439, at \*2 n.3 (denying stay pending appeal).

Despite this consensus, Defendants attempt to manufacture a circuit split based on the Second Circuit's opinion in *City of New York v. Chevron Corp.*, 993 F.3d 81 (2d Cir. 2021). *See* Mot. at 5–6. But *City of New York* creates no conflict because "that case involved [an] ordinary-preemption defense to a [diversity] case first filed in federal court," so the Second Circuit never analyzed federal subject-matter jurisdiction at all, let alone jurisdiction over removed state-law claims like those at issue here.[6] *City of Hoboken*, 45 F.4th at 708; *see also Baltimore*, 31 F.4th at 203 ("*City of New York* was in a completely different procedural posture" and the Second Circuit "never addressed its own subject-matter jurisdiction."); *Boulder*, 25 F.4th at 1262; *Rhode Island*, 35 F.4th at 55. The Second Circuit in fact disavowed any conflict between its holding and the "fleet of cases" remanding climate-deception cases to state courts, which now include the Third Circuit's decision in *Hoboken*. *See City of New York*, 993 F.3d at 94. Given the unanimity of courts rejecting Defendants' removal arguments, their likelihood of success before the Supreme Court is exceedingly small.

---

[6] As Plaintiffs will explain in their briefing in support of their motion to remand, the cases addressing interstate pollution nuisance on which the Second Circuit relied do not provide support for Defendants' federal-common-law removal theory either because they likewise did not address federal subject-matter jurisdiction. *See* Mot. at 5 (citing *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410 (2011); *City of Milwaukee v. Illinois*, 451 U.S. 304 (1981); and *Int'l Paper Co. v. Ouellette*, 479 U.S. 481 (1987)). Defendants also cite in passing to *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922 (5th Cir. 1997), *see* Mot. at 5–6, but the Third Circuit correctly explained that *Sam L. Majors* is an "outlier[]" decision that "most courts recognize [is] not good law," *City of Hoboken*, 45 F.4th at 708.

**b. The Supreme Court's Call for the Solicitor General's Views Does Not Help Defendants Satisfy the Minimum Showing of Success.**

The Supreme Court's call for the views of the Solicitor General in the *Boulder* case, *see* Mot. at 6–7, does not render a grant of certiorari likely, much less success on the merits. Defendants raised this very argument before the Third Circuit in *Hoboken*, but the Third Circuit did not find this development sufficient to warrant staying its mandate. *See* Defendants-Appellants' Citation of Supplemental Authorities, *City of Hoboken v. Chevron Corp., et al.*, No. 21-2728, Dkt. 144, at *1–2 (Oct. 4, 2022); *City of Hoboken*, No. 21-2728, Dkt. 146 (3d Cir. Oct. 12, 2022) (denying stay of mandate). This Court should follow the Third Circuit's lead. The Supreme Court's call for the views of the Solicitor General does not render a certiorari grant likely.

Even according to the outdated empirical analyses on which Defendants rely, the Supreme Court denies certiorari petitions in about two thirds of cases in which it seeks the views of the United States, and the likelihood of denial increases to about 80 percent when the United States recommends denying certiorari review. David C. Thompson & Melanie F. Wachtell, *An Empirical Analysis of Supreme Court Certiorari Petition Procedures: The Call for Response and the Call for the Views of the Solicitor General*, 16 GEO. MASON L. REV. 237, 276, 295 (2009). The Supreme Court itself has explained, moreover, that a request for the Solicitor General's views is "hardly dispositive of an application to block implementation of a Court of Appeals' judgment" and that "the Court denies certiorari in such cases more often than not." *Conkright v. Frommert*, 556 U.S. 1401, 1403 (2009) (Ginsburg, J., in chambers).

Pointing to past *amicus* briefs and other previous statements made by the United States, Defendants contend that there is a "conflict between the United States' position" and the circuit court opinions affirming remand in similar climate-deception cases, which "further weighs in favor of Supreme Court review." Mot. at 6–7. But the United States has never taken a position on the

cert-worthiness of Defendants' novel federal-common-law theory of removal, which is the only issue on which the Supreme Court has sought the Solicitor General's view.[7] And in any event, the Solicitor General is free to revisit and modify previous positions taken by the United States as *amicus curiae*. Since the United States filed the *amicus* briefs Defendants cite, five circuits have ruled against Defendants on the very question presented in *Boulder*. At a minimum, the Solicitor General has good reason to take a fresh look at the issue.

Finally, even if the Solicitor General were to recommend granting certiorari in *Boulder*, and even if the Solicitor General were to further recommend reversing the Tenth Circuit's judgment, this still would not render Defendants' likelihood of success on the merits sufficient to warrant a stay. The empirical analyses Defendants cite confirm as much, showing that "[t]he Court's ultimate decision on the merits is only loosely correlated with the [Solicitor General]'s recommendation on the outcome at the petition stage." Thompson & Wachtell, *supra*, at 278. The Supreme Court's soliciting the Solicitor General's views does not render Defendants' likelihood of success "significantly better than negligible." *See In re Revel AC, Inc.*, 802 F.3d at 571.

Ultimately, Defendants would have to "knock down multiple litigation pins" to prevail on the merits in the Supreme Court. *See Honolulu*, 2021 WL 839439, at *2 (denying stay of remand pending appeal). Defendants cannot make the minimum required showing of a "significantly better than negligible" likelihood of success; as a result, this Court's inquiry into the remaining *Nken* factors "is unnecessary, and the stay should be denied without further analysis." *See In re Revel AC, Inc.*, 802 F.3d at 571 (citation omitted).

---

[7] Nor does the United States' position in *American Electric Power Co.*, 564 U.S. 410—a case in which the plaintiffs expressly brought federal-common-law nuisance claims, in federal court, seeking to cap power companies' emissions—say anything about the Solicitor General's views as to the cert-worthiness of the *Boulder* petition or the removability of state-law climate-deception suits like this one.

### 2. Defendants Will Not Suffer Irreparable Injury Absent a Stay.

To satisfy the second "critical" factor, the moving party must show that it faces harm that is both irreparable and at least probable, not merely possible. *Nken*, 556 U.S. at 434–35; *see also In re Revel AC, Inc.*, 802 F.3d at 571. The movant must "demonstrate an injury that is neither remote nor speculative, but actual and imminent." *In re Revel AC, Inc.*, 802 F.3d at 571 (citation omitted). Defendants do not identify any irreparable, non-speculative harms they might incur.

Defendants first contend that they would "face substantial hardship" without a stay because they "will be required to litigate remand issues in this Court without the aid of potentially dispositive instruction from the Supreme Court." Mot. at 13. But unless and until the Supreme Court grants certiorari and holds otherwise, the Third Circuit's *Hoboken* opinion is binding precedent in this Circuit. In the district court orders from the *Annapolis*, *Minnesota*, and *Hoboken* cases on which Defendants rely, the courts stayed briefing or execution of remand because their respective circuits had not yet addressed Defendants' jurisdictional arguments but would soon do so.[8] Here, dispositive guidance from the Third Circuit already exists as to the precise theories of removal that are the subject of the relevant certiorari petitions.

Defendants also argue that if the Supreme Court grants certiorari and reverses, Defendants' "efforts expended in the interim . . . on remand issues will have been entirely unnecessary," and they might "undergo[] meaningful (and costly) litigation in state court—including substantive

---

[8] *See City of Annapolis v. BP P.L.C.*, No. ELH-21-772, 2021 WL 2000469, at *4 (D. Md. May 19, 2021) (staying briefing on remand motion pending appeal in a similar case because "the Fourth Circuit ha[d] yet to opine" on several of defendants' asserted removal bases raising "novel questions of law"); *Minnesota v. Am. Petroleum Inst.*, No. 20-1636 (JRT/HB), 2021 WL 3711072, at *4 (D. Minn. Aug. 20, 2021) (staying execution of remand pending appeal in which "the Eighth Circuit will be addressing for the first time whether the state court has jurisdiction to resolve the claims and redress the injuries alleged at all"); *City of Hoboken v. Exxon Mobil Corp.*, No. 20-cv-14243, Dkt. 133, at *3, *5–6 (D.N.J. Dec. 15, 2021) (staying execution of remand pending appeal, where Third Circuit had not yet reviewed defendants' removal arguments).

motion practice and possibly even discovery." Mot. at 13–14. But it is well established that "injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough" to show irreparable injury. *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (citation omitted); *see also Renegotiation Bd. v. Bannercroft Clothing Co.*, 415 U.S. 1, 24 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.").

Defendants cite *Estate of Maglioli v. Andover Subacute Rehabilitation Center I*, No. CV 21-2114 (KM)(JBC), 2021 WL 2525714, at *6–7 (D.N.J. June 18, 2021), for the proposition that simultaneously litigating their appeal in federal court and Plaintiffs' underlying claims in state court is irreparable harm, but that case is distinguishable. The removing defendant there appealed from the district court's remand order, arguing in part that a federal statute conferred *exclusive* jurisdiction on the district court, *id.* at *5, such that the Third Circuit would consider on appeal "whether state courts have the authority to hear Plaintiffs' claims at all," *id.* at *7. The relevant appeal was already scheduled for oral argument when the district court stayed proceedings, moreover, and the plaintiffs "d[id] not dispute that the burden of simultaneous litigation . . . constitutes irreparable harm." *Id.* at *3, *7 n.3. The facts here are entirely different—the Third Circuit has already affirmed remand in *Hoboken* and declined to stay its mandate, Defendants do not contend that federal courts have exclusive jurisdiction over Plaintiffs' claims, and Plaintiffs do not concede that "simultaneous litigation" can constitute irreparable harm, because it does not. This Court should follow the plethora of much more analogous climate-deception cases that have correctly found the ordinary cost of litigation is not irreparable harm.[9]

---

[9] *See, e.g.*, *City & Cty. of Honolulu v. Sunoco LP*, Nos. 21-15313, 21-15318, 2021 WL 1017392, at *1 (9th Cir. Mar. 13, 2021) (that "the parties will be required to litigate the merits of [plaintiffs']

Finally, Defendants argue that if the Supreme Court ultimately reverses the multiple circuit decisions affirming remand, "Defendants will have been denied their right to a federal forum" and could face inconsistent outcomes. Mot. at 13–14. But if the Court grants Plaintiffs' motion to remand, Defendants can simply appeal, which they will doubtless do whether or not there is intervening Supreme Court authority. Defendants could not be permanently denied access to the federal courts simply by this Court denying a stay of its own proceedings to determine whether it has jurisdiction over this case. Even if the case is remanded and ultimately returns to federal court, "the interim proceedings in state court may well advance the resolution of the case in federal court," because "the parties will have to proceed with the filing of responsive pleadings or preliminary motions, regardless of the forum." *Baltimore*, 2019 WL 3464667, at *6 (denying stay pending appeal); *accord Boulder*, 423 F. Supp. 3d at 1074 ("It is not unusual for cases to be removed after substantial state litigation."). And "as important as it is to make correct decisions about matters of federal jurisdiction and even removal procedure, trial in state court is not a horrible fate." 15A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3914.11.1 (3d ed. Sept. 2022 update).

---

claims in state court simultaneously with these appellate proceedings . . . do[es] not rise to the level of irreparable harm"); *Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*, 423 F. Supp. 3d 1066, 1074 (D. Colo. 2019) (rejecting argument that defendants "will suffer irreparable harm if a stay is not granted because they will be forced to litigate this same case before the Tenth Circuit and in Colorado state court, and could face burdensome discovery in state court"); *District of Columbia v. Exxon Mobil Corp.*, No. 20-1932 (TJK), Dkt. 126, at *2 (D.D.C. Dec. 20, 2022) (declining to stay execution of remand, finding defendants' argument "that they might have to litigate simultaneously their appeal from this case and the remanded case in state court" did not amount to irreparable injury); *Mayor & City Council of Baltimore v. BP P.L.C.*, No. ELH-18-2357, 2019 WL 3464667, at *5 (D. Md. July 31, 2019) ("Nor have defendants shown that the cost of proceeding with litigation in state court would cause them to suffer irreparable injury.").

In sum, Defendants fail to show that they would suffer any irreparable harm by proceeding with the normal course of litigation, and the Court can deny their requested stay for that reason as well. *See In re Revel AC, Inc.*, 802 F.3d at 570–71.

### 3.   A Stay Would Substantially Harm Plaintiffs and Contravene the Public Interest.

"Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest." *Nken*, 556 U.S. at 435. Where, as here, the party opposing the stay is a government entity, "[t]hese factors merge." *Id.* Although the Court need not reach these factors, *see In re Revel AC, Inc.*, 802 F.3d at 571, they too counsel against a stay.

A stay could significantly prejudice Plaintiffs' ability to prosecute their case, through irreversible loss of evidence. Plaintiffs allege that much of Defendants' climate science research occurred during the 1960s and 1970s, *see* Compl. ¶¶ 58–71, and many of Defendants' deceptive practices occurred in the 1980s and 1990s, *see id.* ¶¶ 104–27. A stay risks thwarting Plaintiffs' access to essential discovery as witnesses age and documents become more stale. "Plaintiff[s] will be prejudiced by a stay because the passage of time creates a risk that relevant witnesses will scatter or disappear" and defendants' relevant documents are "at risk of being lost or misplaced," which "could hinder [Plaintiffs'] ability to prove [their] claims." *Costantino v. City of Atlantic City*, No. 13–6667 (RBK/JS), 2015 WL 668161, at *4 (D.N.J. Feb. 17, 2015).

Both Plaintiffs and the public have a strong interest in moving this case forward, including to put an end to Defendants' ongoing CFA violations. Plaintiffs allege that Defendants' acts of deception and disinformation are ongoing, including through Defendants' efforts to "greenwash" their brands, *see, e.g.*, Compl. ¶¶ 158–232, and Plaintiffs seek to enjoin Defendants' deceptive business practices that continue to violate the CFA, *see id.*, Prayer for Relief ¶ 8. A stay would

enable these harmful and unlawful acts to continue unabated. *Cf. Bizzarro*, 2009 WL 3817927, at *2 (finding stay would not substantially injure plaintiffs because case was "limited to a past practice and d[id] not involve an on-going allegedly unconstitutional policy and practice"). A stay would prejudice Plaintiffs' ability to protect New Jerseyans from Defendants' continued CFA violations and contravene the public interest. Defendants muddy the waters by asserting that the State of New Jersey has known about climate change and its impacts for a number of years. *See* Mot. at 11–12. Those assertions are irrelevant because what matters for purposes of a stay is the harm a stay would cause Plaintiffs and the public in the context of this litigation, not Plaintiffs' knowledge of the impacts of climate change.

A stay risks significantly harming Plaintiffs' ability to prosecute their case and would prejudice both Plaintiffs and the public by enabling Defendants' deceptive practices to continue unchecked. The final two *Nken* factors further reinforce that the Court should deny the Motion.

### D. The Court Should Not Stay This Case Under Its Inherent Authority.

Even if the Court evaluates the requested stay under its inherent docket-management authority, the Motion fails. Defendants primarily argue that a stay would promote judicial economy, preserve resources, and avoid inconsistent results. But each of Defendants' arguments hinges on the dual contingencies that the Supreme Court will both grant certiorari in a similar case *and* reverse the five circuit courts that have rejected Defendants' federal-common-law removal theory. Both those outcomes are highly speculative, in stark contrast to the cases Defendants cite. In each of them, guidance from an appellate court[10]

---

[10] Several of Defendants' cases involved stays pending resolution of an appeal as of right to a federal circuit court. *See City of Hoboken*, No. 20-cv-14243, Dkt. 133, at *5; *City of Annapolis*, 2021 WL 2000469, at *4; *Minnesota*, 2021 WL 3711072, at *4; *Estate of Maglioli*, 2021 WL 2525714, at *3–7; *MEI, Inc. v. JCM Am. Corp.*, No. 09-351, 2009 WL 3335866, at *4–5 (D.N.J. Oct. 15, 2009). Another involved a stay pending the Supreme Court's decision in another case—

or other body[11] was certainly or almost certainly forthcoming—at minimum, the relevant parallel proceedings were already underway.[12] And even under this more lenient standard, the *Nken* factors provide relevant considerations to guide the Court's analysis. *See Metro. Life Ins. Co.*, 2019 WL 6050755, at *7 (the court "may consider other circumstances present in the case").

Defendants cite no case in which a court stayed proceedings, pending the outcome of Supreme Court review in another case, *before* the Supreme Court had granted certiorari review. Courts in this Circuit have denied stays in that posture because the benefits of a stay are so speculative. *See, e.g.*, *McAnaney v. Smithkline Beecham Corp.*, No. 12-5120 (WHW), 2012 WL 12906184, at *2 (D.N.J. Oct. 23, 2012) (denying stay in part because "the possibility that the Supreme Court will grant certiorari and alter the legal framework set forth by the Third Circuit is remote at this juncture"); *Moeller v. Bradford Cty.*, No. 3:CV-05-0334, 2007 WL 431889, at *2 (M.D. Pa. Feb. 5, 2007) (similar). Any potential benefit from Defendants' requested stay here is

---

*in which the Supreme Court had already granted certiorari* and heard oral arguments. *Mey v. Got Warranty, Inc.*, No. 5:15-CV-101, 2016 WL 1122092, at *1–3 (N.D. W.Va. Mar. 22, 2016).

[11] Many cases Defendants cite involved stays pending *inter partes* review or reexamination of patents-in-suit by an expert agency, which was either already instituted or was highly likely to be instituted. *See Gesture Tech. Partners, LLC v. LG Elecs. Inc*., No. 21-19234 (JMV) (MAH), 2022 WL 1002101, at *1–2, *6 (D.N.J. Apr. 4, 2022); *Depomed Inc. v. Purdue Pharma L.P.*, No. 13–571 (JAP), 2014 WL 3729349, at *1–2 (D.N.J. July 25, 2014); *Neste Oil OYJ v. Dynamic Fuels, LLC*, 2013 WL 3353984, at *1, *4 & n.4 (D. Del. July 2, 2013); *Abbott Diabetes Care, Inc. v. DexCom, Inc*., No. 06–514 GMS, 2007 WL 2892707, at *1, *4–5 (D. Del. Sept. 30, 2007); *but see Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc*., No. 3:09cv791, 2010 WL 1946262, at *1–2, *5 (E.D. Va. May 10, 2010) (denying stay pending *inter partes* reexamination of patents-in-suit). Another involved a stay pending resolution of arbitration ordered by the district court. *Bechtel Corp.*, 544 F.2d at 1210, 1215. Two others involved stays pending decisions by the Judicial Panel on Multidistrict Litigation as to those cases' inclusion in multi-district litigation. *See Virginia ex rel. Integra Rec LLC v. Countrywide Secs. Corp.*, No. 3:14CV706, 2015 WL 222312, at *3–5 (E.D. Va. Jan. 14, 2015); *Divine Fish House, Inc. v. BP, P.L.C.*, No. 2:10–cv–01461, 2010 WL 2802505, at *1–2 (D.S.C. July 14, 2010).

[12] *See Michelin Retirement Plan v. Dilworth Paxson, LLP*, No. 6:16-3604-HMH-JDA, 2017 WL 2531845, at *2, *4–5 (D.S.C. June 12, 2017) (granting stay pending resolution of parallel criminal proceedings and a related civil proceeding).

likewise too uncertain to amount to a "clear countervailing interest to abridge a party's right to litigate." *CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*, 381 F.3d 131, 139 (3d Cir. 2004).

### 1. A Stay Would Unduly Prejudice Plaintiffs and New Jersey Residents.

As described above, a stay here would unduly prejudice Plaintiffs' ability to prosecute their case by risking the loss of essential discoverable evidence from elderly witnesses and decades-old documents. *See, e.g.*, *Costantino*, 2015 WL 668161, at *4. A stay would also prejudice Plaintiffs' ability to protect New Jerseyans from continued exposure to Defendants' sophisticated climate disinformation campaigns, and prejudice Plaintiffs' case by "depriv[ing them] of [their] choice of forum, even if only for the time being." *Interstate Serv. Provider, Inc. v. Jordan*, No. 4:21-cv-267, 2021 WL 2355384, at *6 (E.D. Tex. June 9, 2021) (declining to stay removed case before deciding motion to remand). And given Defendants' low likelihood of success in the Supreme Court, these harms from a stay would very likely be borne with no countervailing benefit to the litigation. *See CTF Hotel Holdings, Inc.*, 381 F.3d at 139.

### 2. A Stay Would Not Cause Defendants Clear Hardship or Inequity.

Where, as here, there is at least "a fair possibility that the [requested] stay . . . will work damage to some one else [sic]," the movant "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. Because Defendants have made no such showing, "a stay is not merited." *See Sunbeam Prods., Inc.*, 2010 WL 1946262, at *2.

Just as Defendants' asserted hardships do not represent irreparable harm, they do not amount to clear hardship or inequity. First, as discussed above, the Third Circuit's *Hoboken* opinion already provides the parties and the Court "dispositive instruction" concerning Plaintiffs' motion to remand. *See* Mot. at 13. Second, Defendants' concerns of potentially expending unnecessary resources briefing remand issues in this Court and engaging in "costly[] litigation in state court," *see id.* at 13–14, do not qualify as clear hardship or inequity. "[T]hat a stay will reduce

20

the burden or expense on the Court and the parties . . . may be said of almost any proposed stay; litigation not actively pursued may cost little, at least in the short run," and does not conversely indicate that proceeding with the case is undue hardship. *Fresenius Kabi USA, LLC v. Fera Pharms., LLC*, No. 15-3654, 2017 WL 2213123, at *7 (D.N.J. May 19, 2017).[13] Further, as described above, "the parties will have to proceed with the filing of responsive pleadings or preliminary motions, regardless of the forum," *Baltimore*, 2019 WL 3464667, at *6, and any progress in state court would serve to advance the case in the unlikely event it is ultimately returned to federal court. The potential for "concurrent litigation is not, without more, sufficiently onerous to establish 'clear' hardship or 'inequity.'" *Akishev*, 23 F. Supp. 3d at 447 (citation omitted).

Finally, Defendants' concerns about being "denied their right to a federal forum" and facing inconsistent outcomes do not represent clear hardship or inequity. *See* Mot. at 13–14. If this Court grants Plaintiffs' motion to remand, Defendants will have the opportunity to appeal the remand order. Should the Supreme Court determine that removal jurisdiction exists in cases like this one, Defendants' appeal would be resolved in their favor, returning this case to federal court consistent with the Supreme Court's ruling and obviating any potential for inequity.[14]

---

[13] *See also Nussbaum v. Diversified Consultants, Inc.*, No. 15–600, 2015 WL 5707147, at *1–2 (D.N.J. Sept. 28, 2015) (denying stay pending appeal of another case in which defendant was an intervenor in part because defendant's concern of "avoiding unnecessary discovery and motion practice" did not qualify as "a clear case of hardship"); *Cammie's Spectacular Salon v. Mid-Century Ins. Co.*, No. 20-12324 (RBK/MJS), 2022 WL 488945, at *2 (D.N.J. Feb. 17, 2022) (rejecting argument that forthcoming motions absent a stay "would be burdensome and potentially wasteful, should the Third Circuit give clarity on questions in this case" because the "routine costs of litigation, without more, do not constitute a particular hardship" (quotation omitted)); *Sunbeam Prods., Inc.*, 2010 WL 1946262, at *4 ("The mere fact that this action will go forward, and that litigating it will cost money, is an insufficient reason to warrant a stay.").

[14] This would also address any potential "harm to the judicial process more generally" from the risk of inconsistent rulings. *See* Mot. 13 n.8. It is also worth noting that a remand order in this case would not create any inconsistency that would not already exist in the Third Circuit based on the remand orders in the *Hoboken* and *Delaware* cases.

3. **A Stay Will Not Simplify Any Issues on the Merits, and Is Unlikely to Even Simplify a Single Asserted Basis for Removal.**

In evaluating whether to exercise its discretion to "hold one lawsuit in abeyance to abide the outcome of another [litigation] which may substantially affect it or be dispositive of the issues," *Akishev*, 23 F. Supp. 3d at 448 (quoting *Bechtel Corp.*, 554 F.2d at 1215), a court should consider whether the other litigation "would simplify the issues to be litigated in this action to a degree sufficient to warrant a stay," *id.* That is not the case here.

For the reasons described above, the likelihood Defendants will prevail in the Supreme Court is slim. So too is the possibility that a stay would simplify any issue in the Court's analysis of Plaintiffs' motion to remand, as the Third Circuit's *Hoboken* opinion already provides binding precedent. *Cf. Estate of Maglioli*, 2021 WL 2525714, at *5 (staying resolution of second remand motion pending appeal as of right from initial remand order, which would "fundamentally affect the outcome of [] pending motions to remand"). Even in the unlikely event that the Supreme Court reverses, its decision will not simplify any issues as to the merits of Plaintiffs' underlying claims, which are not at issue in any of Defendants' petitions. Defendants' arguments to the contrary, *see* Mot. at 8–9, boil down to speculation that the Supreme Court will grant certiorari, reverse lower courts' affirmances of remand, then reach beyond the jurisdictional questions presented and resolve merits questions not addressed by any court below. The chain of speculative inferences needed to "simplify" the case in this way is untenable and this factor weighs against remand. *See Cammie's Spectacular Salon*, 2022 WL 488945, at *1–2 (denying stay pending appeal to the Third Circuit in similar cases raising similar questions in part because "the potential for simplification of the issues [wa]s uncertain").

Importantly, even if the requested stay presented a strong likelihood of simplifying the issues in this case, this Court "has an independent obligation to determine whether subject matter

jurisdiction exists." *Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 293 (3d Cir. 2012) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)). Staying the case before resolving Plaintiffs' motion to remand would unnecessarily delay that essential determination. As the court explained in *Interstate Serv. Provider, Inc.*, federal courts should be wary of "staying a case without first verifying subject matter jurisdiction" by resolving pending motions to remand. 2021 WL 2355384, at *4–6 ("To be sure, staying a case and adjudicating a merits issue are not equivalent exercises of the judicial power. Yet, to some degree, either action necessarily implicates the Court's authority to exercise its judicial power—and, thereby, subject matter jurisdiction as well."). Staying a removed case prior to addressing remand also "seems incongruent with Congress's intent for the removal-and-remand process," which was "designed . . . to address jurisdictional matters speedily." *Id.* at *6. This is not a scenario in which a stay would simply delay a federal court's resolution of the merits; rather, it would delay this Court's determination of whether it has subject-matter jurisdiction over this case in the first place.

### 4.  The Stage of This Litigation Does Not Suffice to Warrant a Stay.

Although courts are more likely to grant stays when a case is in its early stages, the comparatively "lesser cost of granting a stay early in the litigation process does not equate to a factor favoring a stay." *Sunbeam Prods., Inc.*, 2010 WL 1946262, at *3 (citation omitted). Particularly when, as here, the requested stay is based on the speculative possibility that the Supreme Court will grant certiorari in another case and abrogate Third Circuit precedent, courts in this District have found the fact that a case "is in its initial stages" to indicate "judicial economy would be best served if the proceedings move forward." *McAnaney*, 2012 WL 12906184, at *2.

Here, the Court should similarly find that the relatively early stage of this litigation counsels against a stay whose value depends on the Supreme Court granting certiorari, among

other hurdles. And even if the Court finds that this factor weighs in favor of a stay, the relatively early stage of this case is insufficient, in light of the remaining factors, to warrant a stay here.

**5.     Conclusion**

None of the four factors that courts in this Circuit typically consider when evaluating stays under their inherent authority support Defendants' requested stay, nor do the additional considerations Defendants raise. The fundamental underlying circumstance that should guide this Court's analysis is that any potential benefit from the requested stay depends on the slim chance that the Supreme Court will grant certiorari and reverse the unanimous consensus of circuit courts rejecting Defendants' federal-common-law theory of removal. Any such potential benefit is thus too uncertain to represent a "clear countervailing interest to abridge [Plaintiffs'] right to litigate." *CTF Hotel Holdings, Inc.*, 381 F.3d at 139. Because Defendants "ha[ve] not shown that the circumstances justify granting the extraordinary remedy of a stay," the Court should deny their Motion. *See Nussbaum*, 2015 WL 5707147, at *3.

**V.     CONCLUSION**

The Court should deny Defendants' requested stay.


Dated:  January 23, 2023                    **MATTHEW J. PLATKIN,**
                                            **Attorney General of the State of New Jersey**
                                            */s/    Andrew Reese*
                                            _____
                                            ANDREW REESE (Attorney ID No. 024662000)
                                            MONISHA A. KUMAR (Attorney ID No. 900212012)
                                            DANIEL P. RESLER (Attorney ID No. 324172020)
                                            MONICA E. FINKE (Attorney ID No. 332512020)
                                             Deputy Attorneys General
                                            **STATE OF NEW JERSEY**
                                            **OFFICE OF THE ATTORNEY GENERAL**
                                            **DEPARTMENT OF LAW PUBLIC SAFETY**
                                            **DIVISION OF LAW**
                                            Richard J. Hughes Justice Complex
                                            25 Market St., P.O. Box. 093
                                            Trenton, New Jersey 08625-0093

Tel: (609) 376-2789
Email:  Andrew.Reese@law.njoag.gov
            Monisha.Kumar@law.njoag.gov
            Daniel.Resler@law.njoag.gov
            Monica.Finke@law.njoag.gov


Victor M. Sher (*pro hac vice* forthcoming)
Matthew K. Edling (*pro hac vice* forthcoming)
Katie H. Jones (*pro hac vice* forthcoming)
Quentin C. Karpilow (*pro hac vice* forthcoming)
Paul Stephan (Attorney ID No. 275272018)
Naomi D. Wheeler (*pro hac vice* forthcoming)
**SHER EDLING LLP**
100 Montgomery Street, Suite 1410
San Francisco, CA 94104
Tel:  (628) 231-2500
Email:  vic@sheredling.com
            matt@sheredling.com
            katie@sheredling.com
            quentin@sheredling.com
            paul@sheredling.com
            naomi@sheredling.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on January 23, 2023, I caused a true and correct copy of the foregoing

Plaintiffs' Opposition to Defendants' Motion to Stay to be served on the following counsel of

record by electronic transmission at the email address listed below:

**GIBSON, DUNN & CRUTCHER LLP**
Joshua D. Dick, (*pro hac vice* forthcoming)
jdick@gibsondunn.com
555 Mission Street
San Francisco, CA 94105
Telephone: 415.393.8200
Facsimile: 415.374.8451

*Attorneys for Defendants*
*Chevron Corporation and Chevron U.S.A. Inc.*

/s/   *Naomi D. Wheeler*
Naomi D. Wheeler
**SHER EDLING LLP**
100 Montgomery St., Ste. 1410
San Francisco, CA 94104
Tel:  628-231-2500
Fax:  625-231-2929
Email:  naomi@sheredling.com

*Attorneys for Plaintiffs*